Argued December 16, 1937; affirmed January 25; rehearing denied
March 1, 1938

## STATE *v.* MORROW
(75 P. (2d) 737, 76 P. (2d) 971)

Department 1.

*T. Walter Gillard*, of Portland (William P. Lord, of Portland, on the brief), for appellant.

*Albert M. Hodler*, Deputy District Attorney, of Portland (James R. Bain, District Attorney, for Multnomah county, of Portland, on the brief), for the State.

ROSSMAN, J. The defendant, against whom a judgment has been entered finding him guilty of the crime of rape committed upon Flora Bradbury, a female child less than 16 years of age, has appealed.

The first contention submitted by the defendant insists that a judgment of not guilty entered in his favor in a filiation proceeding instituted by Flora Bradbury, who is also the prosecutrix in the present criminal

charge, demands a finding of not guilty in this action. That proceeding was conducted pursuant to §§ 16-901 to 16-914, Oregon Code 1930, and the judgment was entered before the trial of this action was commenced. The issue is whether the filiation proceeding constituted jeopardy of the defendant's life or liberty within the contemplation of Article I, § 12, Oregon Constitution, which provides: "No person shall be put in jeopardy twice for the same offense." Both proceedings concern the same woman, and, as already indicated, the defendant in this action was also the defendant in the filiation proceedings.

■ Our filiation statute has been construed many times by this court. In *State ex rel. Borland v. Yates,* 104 Or. 667 (209 P. 231), this court, after declaring that such a proceeding "is a special proceeding, civil in nature," held that the statute authorizing it conferred no right of appeal upon the state. In *State v. Newman,* 109 Or. 61 (218 P. 936), the decision stated that the purpose of the above-mentioned statute is to compel the putative father to support his child, and that it does not authorize the imposition of any penalty. It pointed out that the main question for determination is the paternity of the child, and that the trial is governed by the rules of evidence which apply in civil cases: a preponderance of evidence satisfies, and nine members of the jury may return a verdict. In *State ex rel. Riggs v. Mackey,* 119 Or. 641 (250 P. 744), the decision was concerned with the quantity of corroborative evidence that is necessary to satisfy the statute's requirement that the prosecutrix's testimony be corroborated. In *State ex rel. Burghart v. Haslebacher,* 125 Or. 389 (266 P. 900), the decision declared:

"It is definitely settled in this state that a proceeding of the character of the case at bar [filiation] is in

the nature of a civil action. * * * The main question here is not the character of the woman, but the fatherhood of the child.''

In *State ex rel. Dickerson v. Tokstad,* 139 Or. 63 (8 P. (2d) 86), the essence of these decisions was summed up thus:

"It is well settled in this state that a proceeding authorized by the statutes under which this prosecution was had, although criminal in form, is not a criminal prosecution but is a special statutory proceeding in the nature of a civil action to enforce a civil obligation or duty, and that since the nature of the proceeding is civil, the proof is to be governed by the rules of evidence which apply in civil cases, and hence that the paternity of the child need not be established beyond a reasonable doubt, but may be proven by a preponderance of the evidence, and that it is not necessary that the jury shall return a unanimous verdict; that a verdict concurred in by nine of its members is sufficient.''

The defendant expresses a belief that our decisions have misconceived the nature of filiation proceedings and argues that they are criminal in nature. We have again examined the question, but remain satisfied with the conclusion expressed in the above-quoted language. We believe that they are civil proceedings.

██ Jeopardy has application to proceedings which subject the guilty to the imposition of a penalty. Some courts include within the category of penal proceedings only criminal actions wherein a fine may be imposed or the defendant may be sentenced to confinement in a penal institution, while other courts include within the category civil proceedings in which punitive damages are sought. In the filiation proceedings no penalty of any kind is recoverable. It is true that a defendant in such a proceeding by failing to comply

with an order made by the court during its course, or at its close, may subject himself to discipline, but such is true to some extent in all actions, whether criminal or civil. A filiation proceeding, being civil in nature and authorizing the imposition of no penalty, cannot place a defendant in jeopardy of life or liberty. From *State v. Kraus, Jr.*, 175 Minn. 174 (220 N. W. 547), in which a judgment convicting the defendant of the crime of carnally knowing a seventeen-year-old girl was affirmed, we quote:

"Defendant offered in evidence the verdict of not guilty in the bastardy case, and insists that the court erred in excluding it. The ruling was correct. * * * Under our statute proceedings to determine paternity are civil actions. It is the general rule that a judgment in a civil action is not admissible in a criminal prosecution as evidence of the facts involved therein. 34 C. J. 972, § 1389; 15 R. C. L. 1000, 1004; State v. Wenz, 41 Minn. 196, 42 N. W. 933. While there are some exceptions to this rule, they do not apply to the facts in this case."

We are satisfied that the circuit court did not err when it made the orders challenged by this issue.

██ Next, the defendant contends that if it be held (1) that filiation proceedings are civil, and (2) that they do not place the accused in jeopardy, nevertheless, the outcome of the proceeding instituted by Flora Bradbury determined that this defendant was not the father of her child, and that therefore the circuit court erred when it permitted the mother to exhibit to the jury, during the course of the rape trial, her child. When the district attorney proposed to bring the child into the courtroom, the presiding judge inquired, "You offer the child on account of resemblance?" and received the reply, "Yes." Apparently all that was done was to afford the jury an opportunity of seeing the

child. Before this course was adopted the mother had testified that she and the defendant had had sexual intercourse and that the defendant was the child's father. The infant at the time of the trial was 11 months old. Generally, evidence of resemblance manifested by a comparison is admissible in proceedings of this character: Wigmore on Evidence (2d Ed.) § 166. In *Anderson v. Aupperle,* 51 Or. 556 (95 P. 330) (seduction proceeding), a child three months of age, and in *State of Russell,* 64 Or. 247 (129 P. 1051) (prosecution for incest), a child 14 months of age, were exhibited to the jury on the issue of parentage. Our decisions found no error in either instance. From *State ex rel. Dickerson v. Tokstad,* supra (filiation proceedings), we quote:

"It appears from the bill of exceptions that the prosecutrix, when called as a witness, took the stand with her baby in her arms and was permitted to hold the baby over the objection of the defendant. This, it is claimed, was prejudicial error, notwithstanding she turned the child over to another person before commencing to testify. The child at the time was less than four months old and it could, had the state so desired, have been offered as an exhibit in the case."

In support of his contention that the outcome of the filiation proceeding was *res adjudicata* of the parentage of the child in the present criminal action, the defendant cites Van Fleet's Former Adjudication, p. 1246; *Commonwealth v. Ellis,* 160 Mass. 165 (35 N. E. 773); *United States v. McKee,* 4 Dillon 128; *Dorrell v. State,* 83 Ind. 357; *People v. Hamberg,* 84 Cal. 468 (24 P. 298); *Halbrook v. State,* 34 Ark. 511 (36 Am. Rep. 17); *The State v. Ashley,* 37 Ark. 403; *State v. Foster,* 3 McCord's Law (S. C.) 442; *Hans Neilsen, Petitioner,* 131 U. S. 176 (33 L. Ed. 118, 9 S. Ct. 672); *Foster v. State,* 8 Okla. Crim. Rep. 139 (126 P. 835);

*Glenn v. State ex rel. Clore,* 46 Ind. 368; *Commonwealth v. McIlvain,* 17 Pa. Co. Ct. 174. We shall now consider these authorities. The defendant quotes from Van Fleet's Former Adjudication, p. 1246, the following:

"A conviction of unreasonably neglecting to support a minor child adjudicates its legitimacy and precludes the defense of bastardy on a second prosecution."

As authority for that statement Van Fleet cites *Commonwealth v. Ellis,* supra, only, which it will be observed is the defendant's second citation. But that was a criminal case and the decision says nothing concerning the admissibility of a civil judgment to prove a fact in a criminal action. In that case the state accused the defendant of failing to support a child of which it claimed he was the father, and, upon his denial of parentage, presented a judgment of guilt entered against him in a previous criminal action under the same statute and concerning the same child. It was held admissible. In *United States v. McKee,* supra, the defendant, who had been found guilty and sentenced to punishment, but later pardoned, for the crime of conspiring to remove distilled spirits from distilleries without payment of the taxes, was next sued in the civil action now under review for a statutory penalty of double the tax. He pleaded (1) his conviction and punishment as just described, and (2) a pardon by the president. In overruling the government's demurrer to these pleas, the court declared:

"* * * if the specific acts of removal on which this suit is brought are the same which were proved in the indictment, the former judgment and conviction is a bar to the present action; and we are also of opinion that the allegations of the answer are sufficient

averments that they are the same. * * * if the indictment and sentence of McKee were for the same offences, both in law and in fact, for which this action is brought, it is conceded that the pardon is also a bar to the civil suit. If it is not conceded, we have no doubt that it is so.''

Since the court believed that the pardon relieved the defendant of not only the penalty assessed in the criminal action but also of the penalty sought in the civil action, which was of a quasi criminal nature, the overruling of the demurrer was the necessary result. In *Dorrell v. State,* supra, the defendant, who had been convicted upon a charge of unlawfully removing a fence from the land of another (James Ricketts), claimed that error was committed when the trial court received as evidence a judgment of a court in an ejectment action which awarded to Ricketts possession of the land, and in instructing the jury that if this ''Judgment was still in force, unreversed and not appealed from, the lines so found by the court in the judgment would be the line dividing the lands.'' The decision in affirming this ruling referred to the authorities which hold that judgments in civil actions are inadmissible in criminal prosecutions, but said:

''We do not question the authorities cited, but are of opinion that they are not applicable to the case presented. The judgments which were admitted in evidence were rendered more than a year before the trial, and before the commission of the offense with which the appellant stood charged, and they settled beyond dispute, as between the prosecuting witness and the appellant, the position of the dividing line between their lands at the date of the judgment, and consequently at the date of the appellant's trespass, unless there had occurred in the meantime a change in the location. The judgment was, therefore, not less significant nor less admissible on behalf of the state in the criminal prose-

cution than would have been a final agreement between the parties establishing the line in the place where it was adjudged to be.''

*People v. Hamberg,* supra, was an appeal by Hamberg from a judgment entered in a criminal action finding him guilty of obtaining money under false pretenses from one Parker. Hamberg's associates had falsely represented to Parker that Hamberg owned the lots in San Francisco which they induced him to purchase. The portion of the decision material to us follows:

''The further claim is made, that error was committed in allowing the introduction in evidence of the judgment roll in a certain case. (Courtney v. Hamberg). The purpose of that evidence was to show that, at the time when the defendant induced the prosecuting witness to part with his property and transfer and deliver it to the defendant, the latter knew that the title was worthless to the property to which he pretended to have a good title, and which he was deeding to the prosecuting witness in exchange for what the defendant was receiving from him, and that the worthlessness of the defendant's title had been adjudged in that very suit.

''This evidence, taken in connection with the testimony of Mr. Dunne, who was the prosecuting attorney here, and the attorney for the adverse party to the defendant in the action just mentioned, certainly tended, at least, to show that the defendant did know, at the time he sold to the prosecuting witness, that he was selling him property to which the defendant had no title.''

In *Halbrook v. The State,* supra, a conviction of the defendant for the crime of bigamy was reversed because, among other errors, the trial court excluded a copy of a decree offered by the defendant divorcing him from one of his alleged wives. The decision stated:
'' * * * if Margaret Halbrook had obtained a divorce from him before he married Mary Mahan, this

third marriage was valid, and not bigamous, as alleged in the indictment;"

In *State v. Ashley,* supra, in which the defendant was accused of the crime of bigamy, the trial judge had excluded a certified copy of a decree divorcing Mary Ann Ashley from him in 1880. The state contended that before the entry of that decree the defendant had married another woman. Upon appeal the court held that the copy of the decree was admissible for the purpose of showing *prima facie* that Mary Ann Ashley must have been living when it was entered. In *State v. Foster,* supra, the defendant, who had been convicted of the crime of forgery, challenged two rulings of the trial judge, in one of which he regarded an individual by the name of Cotter as a competent witness, and in the other of which he received the record of a suit brought by the defendant against Cotter. The defendant was accused of having forged an instrument in the form of a receipt which bore Cotter's signature. The state claimed that he had changed its date from 1822 to 1820. The defendant's objection to Cotter as a witness was this: if the receipt were held to be a forgery its effect as a release would be destroyed, and thereupon Cotter's claim against the defendant would be revived. Therefore, he was disqualified by reason of interest. The record of the suit indicated that the accounts involved in it were referred to arbitrators who disregarded the receipt and absolved the defendant of all claims held by Cotter. The court, in the decision under review, held that no error was committed in the receipt of the judicial record. We quote from it:

"The prisoner had contended that Cotter was an interested witness. The state was then called on to show that he could have no possible interest in the receipt. This record proved the fact."

In other words, it had been judicially determined that Cotter had no claim of any kind against the defendant, whether the receipt were a forgery or not. Therefore, since he had no claim upon which he could base an action in the civil courts, the civil judgment was admissible in the criminal action to prove that fact. *Hans Neilsen, Petitioner,* supra, was a criminal action prosecuted under the federal anti-polygamy statutes. The court held that the second prosecution (under review) could not be maintained because its facts were ingredients of a former crime for which Neilsen had been penalized. We find nothing in the decision which indicates whether a civil judgment is admissible in a criminal action to establish any fact involved in the latter. In *Foster v. State,* supra, a conviction of manslaughter was reversed because the trial judge had refused to admit in evidence an order of the district court granting to the deceased a temporary injunction restraining the appellant from removing an infant child from the jurisdiction of the court, and requiring him to retain the child within the jurisdiction of the court until the matter could be adjudicated. The defendant claimed that he inflicted the mortal wound while the deceased was attempting to steal from him the child. The decision held that the injunction order should have been received "because under these proceedings it was the duty of appellant to keep the infant child in question within the jurisdiction of the court, and not to allow any person to take it out * * *; and in attempting to do this if he acted in good faith, * * * he was simply obeying an order of the court." In *Glenn v. State ex rel. Clore,* supra (bastardy proceedings), the defendant, who had been found to be the father of an illegitimate child born to Margaret Clore, claimed on appeal that error was committed when the trial judge permitted the prosecu-

tion to read in evidence the judgment in a seduction action brought against him by the same woman which found him to be the infant's father. The judgment was admitted for the purpose of proving that sexual intercourse had taken place between the complaining witness and the defendant. The trial judge instructed the jury that the record conclusively established such fact, and that it was to be regarded by them as *res adjudicata*. In holding that the record was not admissible, the decision said:

> "The law as applicable to both these questions is clearly settled by this court in the case of Maple v. Beach, 43 Ind. 51, where Downey, J., speaking for the whole court, says: 'A judgment is always evidence of the fact that such a judgment has been given. * * * But when the judgment is offered not merely as evidence of its own existence, but as proof of some fact or facts upon the supposed existence of which the judgment was founded, the rule is very different. When the judgment is offered for this last named purpose, the general rule is, that it is not binding upon anyone except the parties thereto, those who might legally have become parties, and those in privity with them. 1 Stark. Ev. 323, and 1 Greenl. Ev., § 252. Another principle which governs in the admissibility and effect of judgments as evidence is, that the binding force and effect of the judgment must be mutual.' "

The court held that although the mother might have an interest in the payments recovered in the bastardy action in which the state, upon her relationship, was the plaintiff, this interest was not sufficient to render the judgment admissible in the seduction action. *Commonwealth v. McIlvain,* supra, is not a decision but a set of instructions which the trial judge gave to a jury. In it nothing was said concerning the admissibility of a civil judgment to prove a fact in a criminal trial.

We find in these decisions no indication of the presence of a general or universal rule that judgments recovered in civil actions become *res adjudicata* of their facts in subsequent criminal actions. *Dorrell v. State,* supra, was nothing more than a projection of the rule that a judgment between others which is a muniment of title (see *Dolph v. Barney,* 5 Or. 191, affirmed in 97 U. S. 652, 24 L. Ed. 1063) is competent evidence of what it adjudicates in that respect. See Freeman on Judgments (5th Ed.) § 655, and 2 Black on Judgments (2d Ed.) § 604. *People v. Hamberg,* supra, is reconcilable with the same rule; however, the court admitted the judgment because it indicated that the defendant must have known that his representations were false. In other words, it was admitted for the collateral purpose of proving notice. In *Halbrook v. State,* supra, and *State v. Ashley,* supra, the judgments which were held admissible were decrees of divorce. They operated *in rem* and therefore bound the whole world. Their effect was to fix the status of the individuals who were parties to the suits out of which they arose, and their admissibility was limited to this single item. For a discussion see Freeman on Judgments (5th Ed.) § 910. In *State v. Foster* (S. C.) the arbitration award embodied in the judgment showed that the witness had no claim against the accused and that he was, therefore, qualified as a witness. To this decision we add *State v. Dixson,* 80 Mont. 181 (260 P. 138), wherein the court held that it was proper to receive an annulment decree which qualified the defendant's wife as a witness for the state. In *Foster v. State* (Okla.) the injunction order which had been obtained upon the deceased's application delineated the defendant's duty. The defendant claimed that he inflicted the mortal wound while complying with its requirements. That fact neg-

atived malice. *Glenn v. State ex rel. Clore* is opposed to the defendant's contentions.

To sustain its position that the outcome of the filiation proceeding did not constitute in the subsequent rape trial *res adjudicata* of any of its issues the state cites *Busby v. State,* 51 Tex. Cr. 289 (103 S. W. 638); *People v. Beevers,* 99 Cal. 286 (33 P. 844); *People v. Kenyon,* 93 Mich. 19 (52 N. W. 1033). In the first of these decisions Busby, who was assistant financial agent of the Texas penitentiary, had been found guilty of an embezzlement of some of its funds. He claimed that the trial judge erred when he permitted the state to introduce in evidence a judgment recovered in an action in which the state was plaintiff, Busby was one of the defendants, and in which the issue was virtually the same as in the subsequent embezzlement trial. In its first opinion the court held that no error was committed in the reception of this record, but upon rehearing it reversed this holding and held that the judgment was inadmissible. We shall later quote from this part of the decision. In the second of the above decisions *(People v. Beevers)* wherein the defendant had been convicted of the crime of bigamy, the court held that error was committed in the reception of a judgment of divorce because "at the time the judgment roll was offered in evidence the case was on appeal to this court." In the third of the above decisions *(People v. Kenyon)* in which the defendant had been convicted of assault and battery, the court stated:

"The judgment in the civil suit for damages in favor of respondent against Miller was not a bar to the prosecution of respondent. Both may have been guilty of assault and battery in the transaction, and liable to criminal prosecution."

From Freeman on Judgments (5th Ed.) § 658, we quote:

"A judgment in a civil case must generally be excluded from evidence in a criminal prosecution."

From Black on Judgments (2d Ed.) § 529, p. 798, we quote:

"A judgment in a civil action is not ordinarily admissible as evidence in a subsequent criminal prosecution."

Before quoting further from texts which state the general rule, we shall mention three decisions which illustrate its application. In *Kilpatrick v. People,* 64 Colo. 209 (170 P. 956), the defendant's conviction of the crime of neglecting to support his wife was reversed because the trial judge admitted in evidence an alimony order in a divorce suit, wherein the defendant and his wife were parties, for the purpose of showing the status of the parties, and proving that it was the defendant's duty to support his wife. Having so construed the effect of the order, the trial judge excluded evidence offered by the defendant showing that his wife had unjustifiably deserted him. In reversing the judgment of conviction, the court quoted from *State v. Weil,* 83 S. C. 478 (65 S. E. 634, 26 L. R. A. (N. S.) 461), the following:

"A judgment in a civil action is not admissible in a subsequent criminal prosecution although exactly the same questions are in dispute in both cases."

We have already quoted from *State v. Kraus, Jr.,* supra, in which the court, on appeal, affirmed a ruling of the trial court excluding from the defendant's trial on a charge of carnal knowledge of a minor female a judgment acquitting him of a bastardy charge brought by the same girl. To these two decisions there should

be added *Glenn v. State ex rel. Clore,* supra, cited by the defendant. There a judgment finding the defendant to be the father of an illegitimate child born to Margaret Clore was reversed because the trial judge, for the purpose of proving intercourse, had permitted the state to introduce in evidence a judgment which found the defendant guilty of the crime of seduction committed with the same woman. See also *State v. Dula,* 204 N. C. 535 (168 S. E. 836).

From 15 R. C. L., Judgments, § 480, p. 1004, we quote:

"A judgment in a civil action is not admissible in a subsequent criminal prosecution although exactly the same questions are in dispute in both cases * * *. For example it has been held that a judgment, in an action of trover brought by one whose animal had been impounded, against the impounder, that the former had been legally notified under the statute of the impounding of his animal, is not even *prima facie* evidence of the sufficiency of such notice in an action by the impounder to recover the penalties and forfeitures provided for in the statute."

From Wharton's Criminal Evidence (11th Ed.) § 846, we quote:

"It is a well-settled rule that judgments and decrees rendered in civil cases are inadmissible in evidence in criminal prosecutions as proof of any facts determined by such judgment or decree."

From *Busby v. State,* supra, we quote:

"Other authorities put the doctrine on other grounds, as that the rule of evidence in civil and criminal cases is different, the one authorizing a judgment on a preponderance of evidence, while the other requires the proof to be beyond a reasonable doubt, etc. Still others place the doctrine on the ground of a want of mutuality, the parties not being the same in criminal and civil cases, and some upon the idea that in a civil

case the parties need not be confronted by the witnesses, but depositions can be taken, while in a criminal case the parties must be confronted by the witnesses against them.''

From an extensive annotation accompanying *Green v. State*, 87 A. L. R. 1251 (204 Ind. 349, 184 N. E. 183), we quote:

''It is a well-settled rule that judgments and decrees rendered in civil cases are inadmissible in evidence in criminal prosecutions, as proof of any facts determined by such judgment or decree. The reasons given to sustain such rule are * * *.''

From an annotation accompanying *State of South Carolina v. Louis Weil,* 26 L. R. A. (N. S.) 461 (83 S. C. 478, 65 S. E. 634), we quote:

''A judgment for or against an accused person is not admissible in a criminal prosecution wherein he is prosecuted for the transaction involved in the civil proceeding.''

The reasons commonly given for the rule are indicated by the excerpt which we took from *Busby v. State,* supra.

In *Jenkins v. Jenkins,* 103 Or. 208 (204 P. 165), we held inadmissible, in a divorce suit based upon charges of adultery made by husband against wife, a judgment of not guilty entered in favor of the wife in a criminal action of like character. Our decision stated:

''It is a general rule that a judgment of conviction or acquittal of a party charged with crime cannot be given in evidence in a civil action to prove or negative facts upon which it was rendered.''

The reasons which the decision gave for the rule are the same as those given by the courts for excluding a civil judgment from a criminal action.

■ We deem the law to be that generally a judgment recovered in a civil action is not admissible in a criminal trial to prove any fact therein involved.

At page 1263 of the annotation already mentioned accompanying *Green v. State* (87 A. L. R. 1251), the editor reviews several decisions which constitute exceptions to the general exclusionary rule. Wharton's Criminal Evidence (11th Ed.) § 846, p. 1456, discusses the exceptions and states:

"However, it cannot be said that such exceptions are definite and recognized as such. In fact, it may be said that the courts fail entirely to discuss the rule in those cases wherein civil judgments are held admissible."

■ The defendant in the instant action does not contend that the facts of his case parallel any case which has been recognized as an exception. To the contrary, he invokes the general rule, but, as we have seen, it is directly opposed to his position. In the filiation proceeding a preponderance of the evidence sufficed; in the present action proof beyond a reasonable doubt is required. In filiation proceedings nine jurors are permitted to return a verdict, but in the present criminal action ten are required. In filiation proceedings corroboration is required; in the present trial no such requirement exists. In the filiation proceeding, as in the present action, the state appeared as plaintiff, but in the former it appeared upon the relation of the mother so that an alleged private wrong could be redressed. Specifically, the purpose was to establish parentage and the putative father's duty to support his child, thereby equalizing between mother and father the burden of supporting the illegitimate child. Had the proceeding succeeded the state could not have ap-

propriated the judgment to its own needs. But in the present action the state is the real party in interest, the wrong mentioned in the indictment is a public one, and the judgment sought is a penal one.

■ The filiation proceeding was not an action *in rem* which fixed the status of the child for the whole world. The judgment-order entered in that proceeding is not depended upon for the purpose of proving any collateral fact, nor to establish *prima facie* any fact. The defendant is frank—he relies upon the result of that proceeding under the doctrine of *res adjudicata;* but we have found no decision which entitles it to that effect. Quite to the contrary, the reasoning upon which that doctrine is based is opposed to the admission into this action of the judgment-order entered in that proceeding.

■ Without further analysis, we express our belief that this case is within the general rule and not within any exception to it. Nothing established in the filiation proceeding became *res adjudicata* in the rape action.

■ The next assignment of error argued by the defendant is based upon an order of the circuit court which overruled his motion for a new trial. The only parts of this motion which are argued, independent of other exceptions, are predicated upon alleged misconduct of one of the jurors, Dr. Katherine S. Myers. To prove the charges of misconduct, the defendant submitted an affidavit signed by Everett Philpoe, another juror. In it Philpoe swore that Dr. Myers expressed, during the course of the jury's deliberations, an opinion that the defendant was the father of the child exhibited by Flora Bradbury, and accompanied her opinion with a statement that her training and experience as an osteopathic physician enabled her to determine that

fact. From Wigmore on Evidence (2d Ed.), § 2346, we quote:

"The requirements of the general principle of Privileged Communications (*ante*, § 2285) are fully satisfied for communications between jurors during retirement. The communications originate in a confidence of secrecy; this confidence is essential to the due attainment of the jury's constitutional purpose; the relation of juror is clearly entitled to the highest consideration and the most careful protection; and the injury from disclosure would certainly overbalance the benefits thereby gained. It has therefore always been assumed and conceded that a juror is privileged not to have his communications with a fellow-juror disclosed upon the witness-stand against his consent."

This privilege is available under § 9-404, subd. 5, Oregon Code 1930. The motion for a new trial was overruled, and we are therefore justified in assuming that an appropriate objection was made and sustained when this affidavit was offered. We believe that no error was committed when the motion for a new trial was overruled.

The fourth exception is based upon a ruling of the trial judge which overruled the defendant's objection to a question submitted by the district attorney to Flora Bradbury when she was under examination. Apparently she had mentioned a conversation which she had had with the defendant in May, 1934, whereupon she was asked, "What did he say to you then?" At this point the defendant objected: "I am not objecting on the ground that it is improper to bring it out at this time, the conversation, I am simply objecting on the ground any conversation back in May of 1934 is quite a few months before this alleged occurrence, it is too remote to have any bearing on this case, that is the ground of my objection." A transcript of the evidence

has not been filed in this court and none is before us. We do not know to what incident "this alleged occurence" referred. To the above question the witness replied, "I met him at the door, Mrs. Rice was with me, and I asked him—I wanted to go to the show—Dad said if I could get enough money from him I could go, so I asked him for it. He said he didn't have it then, but for me to get ready here and go up to his room and he would give it to me." The above, apart from a few words of colloquy between counsel which are wholly immaterial to a consideration of the merits of this exception, supplies us with all the information which we possess concerning this exception.

It is axiomatic that error is never presumed but must be shown affirmatively. It is presumed that the rulings of the trial judge in receiving or rejecting evidence is proper unless the record shows otherwise. These circumstances impose the burden of showing error upon the appellant. The record does not indicate that the trial judge erred when he made the above ruling, and, hence, this exception affords no occasion for a reversal.

The disposition which we have just made of the alleged error, predicated upon the testimony of Flora Bradbury, is equally applicable to an exception saved when another witness, Ruby R. Rice, was under examination by the district attorney. The brief excerpt from the testimony appearing in the bill of exceptions does not enable us to determine whether error was committed when the defendant's objection to the question propounded to her was overruled. We are required to believe that no error was committed.

The next assignment of error is based upon the ruling of the trial judge which sustained the district attorney's objection to the following question submit-

ted to the prosecutrix: "Now, before you came to Portland in 1933 had you not been going about with a young man down there?" The ruling was based upon the ground that since she was under the age of consent her conduct with other men was immaterial, but before this ruling was made the trial judge inquired of defendant's counsel, "Do you want to show that somebody else is the father of the child?" and received the reply, "I will say frankly to Your Honor that would be something I will not be able to do in this case."

From *State v. McKiel*, 122 Or. 504 (259 P. 917), we quote:

"Since the girl was under age of consent and force is not an essential element of the crime, it is clear that this line of inquiry was not proper and had no relevancy to the issue. In some jurisdictions it is permitted, as affecting the creditibility of the witness, but not so in this state: State v. Ogden, 39 Or. 195 (65 Pac. 449). The girl is not on trial and it would be unfair to allow evidence of other specific acts of unchastity where there would be no opportunity to make any defense against such accusations."

In an annotation in Volume 65 A. L. R., at page 425, the editor cites the decision just mentioned and states:

"The courts of a majority of the jurisdictions accede to the view that the prosecuting witness, in a prosecution for statutory rape, cannot be cross-examined as to prior acts of sexual morality or levity of conduct on her part."

This exception discloses no error.

The next assignment of error argued by the defendant is substantially similar to the one of which we have just disposed. He sought to show by a Mrs. Jean Morrow, a witness produced by himself, immoral conduct upon the part of the prosecutrix. Her answers

to his questions were permitted so far as they contradicted answers previously made by the prosecutrix, but the district attorney's objections to other questions concerning the prosecutrix's purported immoral conduct were sustained. From 52 C. J., Rape, § 111, p. 1083, we quote:

"Except where admissible to rebut corroborating circumstances, such as pregnancy, miscarriage, or the birth of a child, in cases of carnal knowledge of a female under the age of consent, her want of chastity is inadmissible to show consent, since she is incapable of consenting. However, it has been held that want of chastity may be shown as affecting the credibility of the prosecutrix as a witness; but there is also authority to the contrary."

This exception reveals no error.

 The last exception is based upon a ruling which permitted L. L. Low, sheriff of Klamath county, and a witness for the state, to answer the following question concerning the prosecutrix: "Do you know her general reputation for truth and veracity in the community in which she lives?" He replied, "Yes." After this answer had been made defendant's counsel objected to the question as being immaterial and improper rebuttal. The court overruled the objection, and thereupon the witness once more replied, "Yes." The bill of exceptions shows that the next morning the following occurred:

"THE COURT: Ladies and Gentlemen of the Jury: Yesterday the Court permitted the Sheriff of Klamath Falls to give testimony touching the good reputation of the prosecuting witness for truth and veracity and for chastity. After further considering that question, the Court is of the opinion that that testimony was improperly admitted, and it is stricken from the record and you are instructed to disregard it. You may proceed with your argument."

A transcript of the testimony is not before us. The presiding judge who was familiar with the atmosphere of the trial, if we may borrow that term from the late Mr. Justice CAMPBELL, believed that this instruction sufficed to cure the error which was apparently committed when he overruled the defendant's objection. We know of nothing which indicates that the instruction did not suffice. Errors are bound to occur from time to time, but having occurred the presiding judge possesses the power to give instructions or in other ways to negative their effect. In the exercise of that power the instruction above quoted was given. We observe that the court did not wait until the arguments had begun, but acted promptly. This exception, in our opinion, reveals no error.

The above constitutes a consideration of all contentions advanced by the defendant. We have found no error in the record and, accordingly, the judgment of the circuit court is affirmed.

BEAN, C. J., and KELLY and BELT, JJ., concur.

Petition for rehearing denied March 1, 1938

ON PETITION FOR REHEARING
(76 P. (2d) 971)

ROSSMAN, J. The defendant's petition for a rehearing presents two contentions: (1) if the filiation proceeding judgment was not admissible as a plea of former jeopardy, or as *res adjudicata* and therefore a bar, yet it was *prima facie* evidence of the defendant's innocence and should have been received; and (2) the fact that L. L. Low, sheriff of Klamath county, was permitted to answer yes to a question concerning the general reputation of the prosecutrix should have been deemed by us reversible error.

■ In support of the first of these two contentions, the defendant cites *Eagle, Star & British Dominions Insurance Co. v. Heller,* 149 Va. 82 (140 S. E. 314 57 A. L. R. 490), and *Schindler v. Royal Insurance Co.,* 258 N. Y. 310 (179 N. E. 711, 80 A. L. R. 1142). Each of these was an action upon a fire insurance policy which named the plaintiff as the insured. In each instance the civil action had been preceded by a criminal action in which the plaintiff, as the defendant, had been convicted. In the Virginia case he was found guilty of willfully burning the property mentioned in the policy of insurance with intention of injuring the company. In the New York case he was found guilty of presenting to the insurance company false and fraudulent proof of loss. In the Virginia case the court held that the judgment of conviction was admissible in evidence as an absolute bar to the plaintiff maintaining the civil action. The New York decision held that the judgment of conviction was admissible for its probative value, but not as a bar. It was deemed presumptive proof of the commission of the crime.

It will be observed that each of these decisions was concerned with a judgment of conviction. Our court has twice spoken concerning the admissibility of a judgment of guilt entered upon a plea of guilty: *Spain v. Oregon Washington R. & N. Co.,* 78 Or. 355 (153 P. 470, Ann. Cas. 1917E 1104); *Meyers v. Dillon,* 39 Or. 581 (65 P. 867, 66 P. 814); and in *McLean v. Sanders,* 143 Or. 524 (23 P. (2d) 321), recognized a broader rule. In it the judgment of guilt was entered, not upon a plea of guilty but after trial. In the first two Oregon decisions the judgment of guilt, although based upon a plea of guilty, was held merely probative; in the third it was held to be a bar.

The Virginia and New York decisions declared that the rule which they were embracing represented the minority view. They supported it, however, with excellent reasoning, and the many reviews which have appeared in legal periodicals acclaim it as sound. Those decisions were concerned with judgments of guilt entered after trial.

We did not discuss the above rule in our previous decision because the instant case is not concerned with a criminal judgment of guilt—it is concerned with a judgment of not guilty entered in a civil proceeding. The very courts which hold a judgment of guilt admissible recognize that a judgment of acquittal is merely a determination that guilt has not been established, and point out that it is not necessarily a finding that guilt might not exist. Nothing said in the decisions cited by the defendant deems admissible the judgment in the filiation proceeding; in fact, both decisions are opposed to its admissibility.

*Baltimore Steamship Co. v. Phillips,* 274 U. S. 316 (71 L. Ed. 1069, 47 S. Ct. 600), also cited by the defendant, contains nothing applicable to the case before us.

We are satisfied that the record does not indicate error concerning Low's testimony.

The petition for a rehearing is denied.

BEAN, C. J., and KELLY and BELT, JJ., concur.