Nanette Dembitz, J.
In this suit to determine the paternity of an out-of-wedlock child and to order support by the putative father, the respondent makes a motion to dismiss on the basis of the special Statute of Limitations incorporated in the Family Court Act of the State of New York. The Family Court Act provides that a proceeding to establish paternity can only be brought within two years of the birth of the child unless paternity has been acknowledged in writing or by furnishing support, except when the petitioner is a public welfare official. A public welfare official is permitted to institute a proceeding within 10 years of the birth of the child, whenever the mother or child “ is or is likely to become a public charge ”. (Family Ct. Act, §§ 517, 522.)
The out-of-wedlock child in this proceeding was born on February 25, 1966. Her mother instituted this paternity suit on September 19, 1968, alleging an acknowledgment of paternity by the furnishing of support. However, upon a demand for a bill of particulars, petitioner conceded that no such support was given. Respondent thereupon made a motion to dismiss; thereafter the Commissioner of Social Services of the City of New York (a public welfare official) moved to join as a copetitioner in the paternity suit.
UNCONSTITTJTIONALITY OF THE TWO-YEAB. LIMITATION
The constitutionality of the statutory discrimination respecting the limitation period as between public welfare officials and the child’s mother or others acting on his behalf, appears to be a question of first impression. Absent higher authority, and with the issue of the validity of the two-year limitation inescapably presented by the facts herein, this court, though a lower court, is obliged to determine whether its enforcement is constitutional. The court concludes that the discrimination against all petitioners other than public welfare officials violates the equal protection guarantee of the Fourteenth Amendment to the United States Constitution.
*683 1. IMPACT OF TWO-YEAS. LIMITATION.
The differentiation between public welfare officials and all other petitioners[1], inflicts a substantial deprivation on an out-of-wedlock child who during his first 10 years of life is not and is not likely to be a public charge — that is, an out-of-wedlock child whose paternity is not .susceptible to suit by a public welfare official. To escape the two-year limitation on other petitioners by proof of an acknowledgement in the manner prescribed by statute, is difficult. The acknowledgement must be firm and unequivocal; furnishing money to the mother or gifts to the child is insufficient[2]. As to a suit within the two years, New York, differing from .some other States, provides no mechanism to assure the initiation of a proceeding on the child’s behalf.[3] And the mother may refrain from resort to court, even though there may be clear evidence of paternity, for reasons that are especially compelling during the two years after the child’s birth — emotional, such as a continuing relation with the father, a hope of its resumption, or chagrin at his failure to marry her; practical, .such as expectation of a voluntary written acknowledgement by the father or of voluntary regular support.
Whatever the cause of the mother’s failure to sue, the child is foreclosed under the New York statute from the economic as well :as the psychological benefits of the establishment of his paternity. The psychological loss is dramatized by the lifelong blank in the space for “ name of father ” on the child’s birth certificate. The underlying handicaps suffered by the illegitimate child as compared to the legitimate, are greatly augmented by a barrier to the establishment to his paternity.[4]
Thus, the limitation provision disfavors in a highly significant respect a child who with his mother is not in the public charge category before the age of 10. He can have his paternity established after the age of 2 only upon a rigorous condition — proof *684 of an unequivocal acknowledgement — whereas the paternity of a child of a financially dependent mother can be established without such proof during eight additional years. The question under the equal protection guarantee of the Fourteenth Amendment to the United States Constitution is whether this statutory discrimination is reasonable from the standpoints of the statutory objective and of the affected children.
2. VIOLATION OF EQUAL PROTECTION.
The major purpose of a Statute of Limitations is the protection of a respondent or defendant from stale claims. (Schmidt v. Merchants Despatch Transp. Co., 270 N. Y. 287, 302.) The differentiation in the Family Court Act does not appear to serve this purpose, since the alleged father remains vulnerable to a paternity claim for 10 years. The justification for the difference in limitations is even more doubtful considering that the paternity statute is primarily intended to “ secure the health and well-being ” of out-of-wedlock children[5].
The purpose of the discrimination in favor of public welfare officials is, instead, the protection of the public purse. (See Commissioner of Public Welfare v. Simon, 270 N. Y. 188, 192.) Indeed, as compared to the public purse, the limitation provision downgrades the public interest in the well-being of illegitimate children and in their approximation of equality with ligitimates; [6] that public interest is protected for a shorter period than the fiscal interest.
In any event, throughout the law there is increasing focus on the rights of children, and from the standpoint of out-of-wedlock children themselves, as individuals, the violation of equal protection by the limitation provision is crystal clear. It is entirely irrational and arbitrary to differentiate in the right of a child to the. possible benefits of a suit to establish his paternity, depending on whether the child or his mother is or is not a public charge during his first 10 years. The child’s status for the rest of his life may be adversely affected on a basis that lacks rational connection with his deprivation. It is the effect of paternity proceedings on the child which renders this limitation provision unconstitutionally discriminatory,[7] even though a distinction in the limitation period for private and *685 governmental petitioners may be valid in other types of suits (see CPLR 215, subd. 4).
The constitutional issue does not turn on the good faith motive of the Legislature nor the method of expressing the classification (see Takahashi v. Fish Comm., 334 U. S. 410, 418). The constitutional question is whether the effect of the statute is to create an irrational discrimination between two classes of individuals. Under these principles, the limitation period on paternity suits by others than public welfare officials must be held unconstitutional. (Cf. Levy v. Louisiana, 391 U. S. 68, 71, supra; Glona v. American Guar. Co., 391 U. S. 73, 75; Matter of Storm v. None, 57 Misc 2d 342, 344; see, also, Baxstrom v. Herold, 383 U. S. 107.)[8] In accordance with the customary method of nullifying and remedying ;an unconsitutional statutory discrimination, the more beneficial provision — the 10-year limitation — must be applied to petitioner.[9]
The motion to dismiss the petition is denied.
The motion of the Commissioner of Social Services to join as copetitioner is granted, in view of the sworn allegation of information and belief that petitioner and the child are now public charges. Respondent can at the hearing renew his attack on that allegation..

. Other than public welfare officials, proceedings may be brought by the child’s mother, guardian, next of kin, or other person standing in parental relation, or by a representative of an incorporated charitable or philanthropic Society (Family Ct. Act, § 522).

. Matter of Wong v. Beckford, 28 A D 2d 137; Schuerf v. Fowler, 2 A D 2d 541, 542, app. dsmd. 3 N Y 2d 987; Matter of Doe v. Roe, 56 Misc 2d 18.

. See Minnesota statute, imposing duty on Public Welfare Commissioner to insure determination of paternity for every illegitimate child, quoted in Krause, Equal Protection for the Illegitimate, 65 Mich. Law Rev. (1967) 477, 505.

. See Krause, Equal Protection and Paternity, 36 Univ. Chicago L. Rev. (1969) 338, 349: “Equality vis-a-vis the father means nothing if the father remains unknown,”

. Commissioner of Welfare v. De Santos, 4 Misc 2d 515, 518.

. See Levy v. Louisiana, 391 U. S. 68, 71; King v. Smith, 392 U. S. 309, 325, 336; Gray and Rudovsky, The Court Acknowledges The Illegitimate, 118 Univ. Pa. L. Rev. (1969) 1, 21-38.

. Cf. Barrows v. Jackson, 346 U. S. 249.

. Cf. Matter of Ortiz, 60 Misc 2d 756, 758, as to constitutional issue posed by fact that limitation period prevents child's acting for himself.

. While the two-year provision is obviously the more beneficial from a respondent’s standpoint, it would be fallacious to argue that the 10-year limitation should for that reason be nullified as unconstitutionally discriminatory. From the standpoint of protection of a respondent from suit, it is justifiable to extend his period of vulnerability in the fiscal interest. Cf. Matter of Jamestown Lodge (31 A D 2d 981, 982); Matter of Moss, 277 App. Div. 289, 292; Costello v. United States, 365 U. S. 265, 281, as to doctrine that the State is not estopped by laches in suite involving the public revenue.