M. Michael Potokeb, J.
This is a proceeding brought by the Commissioner of Social Services (formerly known as the Commissioner of Welfare) of the City of New York, seeking to declare the respondent to be the father of a male child born to one Dorothy Hamilton on February 20, 1969. The instant petition was instituted by verified complaint dated August 31,1972.
Respondent asserts that the proceeding is barred by the twp-year Statute of Limitations as set forth in subdivision (a), of Section 517 of the Family Court Act and moved to declare unconstitutional subdivision (b) of said section which extends to 10 years from the date of birth of the child the time limit when - the proceeding is. brought by the Commissioner of Social Services.
The Attorney-General of1 the State of New York, pro se, intervenes at the court’s request and in accordance with his duty pursuant to section 71 of the Executive Law to defend the laws of the State. The court is indebted to the Assistant Attorney-General whose legal brief assisted the court immeasurably in formulating its opinion.
Respondent claims that he is being denied the equal protection of the laws because, pursuant to subdivision (b) of section 517 of the Family Court Act, the Commissioner of Social Services can bring a paternity suit until 10 years after the birth of the *1015 child if the child is receiving public assistance, while the natural mother, a private litigant, is limited to two years under subdivision (a) of section 517.
Eespondent argues that section 517 is unconstitutional and discriminatory in that it is violative of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States for it provides a poor person with greater rights against a respondent in a paternity action than a rich person, and moreover, it grants unto the Commissioner of Social Services greater rights than the natural mother, and others similarly situated. He strongly urges that the purpose of1 a Statute of Limitations is to require that any necessary litigation to be brought within such time as the particular facts and circumstances may be proved with the utmost certainty and before adequate proof has become stale or entirely lost citing Leitch v. New York Cent. R. R. Co. (388 Ill. 236; Ann. 155 A. L. R. 835).
Eespondent also relies upon Matter of Wales v. Gallan (61 Misc 2d 681), wherein my learned colleague Judge Nanette Dembitz declared the dual Statute of Limitations in direct violation of the equal protection clause of the Fourteenth Amendment and held that the natural mother is entitled to the same 10-year Statute of Limitations as does the Commissioner of Social Services,
The rules of statutory construction provide that a strong presumption of constitutional validity attaches to statutes (Fenster v. Leary, 20 N Y 2d 309; National Assoc. of Harness Drivers v. New York State Racing Comm., 57 Misc 2d 135) and any attack based upon the ground that a statute is unconstitutional must be sustained beyond a reasonable doubt (Wiggins v. Town of Somers, 4 N Y 2d 215; Fenster v. Leary, supra; Martin v. State Liq. Auth., 43 Misc 2d 682; Matter of Van Berkel v. Power, 16 N Y 2d 37).
It has been held that this presumption attaches even if the ¿lassification results in some inequality (Matter of Pratt v. Tofany, 37 A D 2d 854; Rankin v. Shanker, 23 N Y 2d 111; McGowan v. Maryland, 366 U. S. 420 [1961]). In this case the delineation between the mother and the Department of Social Services is not per se offensive to the Constitution as long as the discrimination is based on reasonable facts to justify it (Dandridge v. Williams, 397 U. S. 471 [1970]; McGowan v. Maryland, supra; Matter of Pratt v. Tofany, supra).
Questions of the wisdom of the classification are for the Legislature (Olsen v. Nebraska, 313 U. S. 236, 246 [1941]), and a statutory discrimination may not be set aside if any state *1016 of facts reasonably may be conceived to justify it. (Dandridge v. Williams, 397 U. S. 471, 485 [1970]; McGowan v. Maryland, 366 U. S. 420, 426 [1961]; Matter of Pratt v. Tofany, supra.)
According the sovereign treatment different from the private litigant is firmly grounded in the common law. Public revenues are entitled to such special protection that it was not until fairly recently that the State was allowed to be sued at all and can now be sued only under special circumstances and under special procedures. (See Court of Claims Act.)
In paternity proceedings the State has set a self-imposed limit of 10 years in which to protect the public revenue. The reason for allowing the city a greater length of time to bring a paternity action goes to the very nature of the city’s role as provider of funds for public support of those children on public assistance who reside in families where the father is absent. The city certainly should be given the widest latitude in trying to retrieve from an available source moneys expended on public assistance, as the public interest is at stake.
The respondent asks in his motion on what logical grounds the delineation can be justified. The answer traces the history of paternity statutes back to Elizabethan times. The chief purpose of the Elizabethan Poor Law of 1576 (18 Eliz. I, c. 3), the progenitor of modern paternity statutes, was not for the protection of the child but rather the indemnification of the parish for the expense of the child’s support, (Clark, Law of Domestic Relations, 162 [1968]; see, also, Matter of Roe v. Roe, 65 Misc 2d 335 [1970].) In 1898, the Appellate Division, Second Department, in People ex rel. Kirkpatrick v. Crowley (25 App. Div. 175, 176-177) described the paternity statute of that time as “an enactment intended to protect the taxpayers of a community against-a burden imposed through the gratification of individual lust.” The protection of the public interest is in the forefront of legislative intent in the enactment of paternity statutes: “ a statute which has for its object the protection of the community against burdensome taxation produced by the acts of individuals in derogation of public policy.” (25 App. Div. 175, 178, supra; People ex rel. Smith v. McFarline, 50 App. Div. 95 [4th Dept., 1900]; Millett v. Baker, 42 Barb. 215 [1864]; People ex rel. Moore v. Beehler, 63 Hun 42 [1892]).
It is because of this recognized public policy of preserving and protecting revenues meant to be expended for the benefit of the public that the .sovereign was exempt from the operation of Statutes of Limitation at common law and remains exempt *1017 to this day in the absence of statutory authority. (Guaranty Trust Co. v. United States, 304 U. S. 126, 132 [1938].) As the Supreme Court stated (p. 133): “ So complete has been [the acceptance of the public policy rationale of sovereign exemption] that the implied immunity of the domestic ‘ sovereign,’ state or national, has been universally deemed to be an exception to local statutes of limitations where the government, state or national, is not expressly included.”
Where a sovereign entity is not named in a limitations statute, it can bring suit after the limitations period has run. (Matter of Smathers, 249 App. Div. 523 [2d Dept., 1937].) Therefore, the recognized difference in status between a sovereign entity, as protector of funds for the general welfare, and a private litigant, as suing solely in his or her individual capacity, plainly justifies differences in treatment. (See, also, Costello v. United States, 365 U. S. 265, 281 [1961]; United States v. Thompson, 98 U. S. 486, 489 [1878].) If the sovereign could constitutionally be totally exempted from limitations in the absence of being named in the statute, it clearly can be held to a more liberal statutory limitations period.
Respondent correctly points out that a purpose of a Statute of Limitations is to protect against stale claims. However, there is nothing absolute about this type of protection. All Statutes of Limitations strike a balance between the rights of plaintiffs with just claims and the rights of defendants to have them promptly litigated. This is the very purpose of the tolling ■ statutes, which allow claims to be brought long after the applicable Statute of Limitations has run where the plaintiff was under a disability such as infancy, insanity or imprisonment (CPLR 208) or was unable to bring suit because of adverse political conditions (CPLR 209).
Notwithstanding the decision in Matter of Howard v. Robinson (32 A D 2d 837 [2d Dept., 1969]), the respondent is in no different position from a defendant who remains liable to suit past the limitations period because of the happenstance that the plaintiff is an infant or an incompetent. The Legislature has determined that municipalities .should be in a similarly protected position where revenues are concerned. As the Court of Appeals has stated “a municipal corporation exists for the benefit of the public and of the community, and only incidentally for the benefit of the individual.” (Matter of Brown v. Board of Trustees, 303 N. Y. 484, 488 [1952]). While the Legislature could have excluded the city entirely from any limitations restriction *1018 (Matter of Smathers, 249 App. Div. 523, 526, supra) it created a 10-year limitations period for the city to strike a balance between the protection of the public fisc and the protection of defendants from stale claims. There is nothing irrational about this classification.
The protection of public funds is of such paramount interest that the courts have uniformly recognized and approved greater rights for governmental entities where the issue was the time in which the sovereign could sue. Thus, the New York courts have consistently held that the defense of laches does not apply against the State. (New York State Water Resources Comm. v. Liberman, 37 A D 2d 484, 489 [1971]; Matter of Levey, 33 A D 2d 1066, 1067 [1970]; Matter of Jamestown Lodge v. Catherwood, 31 A D 2d 981, 982 [1969]; Matter of Moss, 277 App. Div. 289, 292 [1950].) If a governmental agency is not subject to the defense of laches, it is difficult to conceive of any constitutional mandate that would make it subject to the defense of limitations, as both defenses are almost identical. The status of the Commissioner of Social Services as a public official in charge of the expenditure of public moneys clearly places him in a different position from a private litigant. It is thus beyond cavil that the Legislature, in protecting public revenues, can provide for a greater period of time in which the city can bring suit to retrieve public funds. Compare subdivision (c) of CPLR 211 with .subdivisions (a) and (e) of CPLR 212 (allowing the State 20 years to bring an action ‘ ‘ for or with respect to ’ ’ real property while setting forth more restrictive limitations for private litigants). .See, also, subdivision 4 of CPLR 215 (allowing the State a greater period of time to bring an action to ' enforce a penalty).
In the light of this rationale, the New York courts have explicitly upheld the statutory scheme set forth in section 517 of the Family Court Act. In Commissioner of Public Welfare v. Simon (270 N. Y. 188 [1936]), the Court of Appeals upheld the then 16-year Statute of Limitations for the Department of Public Welfare and refused to apply the two-year limitations period reserved for private litigants. The court stated that the statute was designed ‘£ to give the procedure in these paternity proceedings whereby the public might be relieved from the support of those liable to become public charges ”. (p. 192; see, also, Commissioner of Public Welfare v. Gavin, 245 App. Div. 545 [1935]). Since the rationale of the statute at issue is clearly the conservation of public revenues, the Legislature can reason *1019 ably deem the protection of the general welfare to require greater procedural rights than those of an individual private litigant.* The fact that a statute may work to the disadvantage of a particular class does not mean that it denies equal protection. (James v. Valtierra, 402 U. S. 137, 142 [1971].) The classification by the Legislature reasonably protects public revenues while balancing the need for a limitation on actions.
Moreover, there is a valid reason for the difference in limitations over and above the need for the city to protect its fiscal interest. The Commissioner of Social Services is faced with a far more severe burden of proving paternity than would be the mother of the child. In many situations of this type, the mother is an adverse party because of her desire to protect the putative father while receiving public assistance and her refusal to co-operate with the Commissioner. This situation has been further complicated by Doe v. Lavine (347 F. Supp. 357 [S. D. N. Y., 1972]), which struck down a New York statute compelling welfare mothers to name the fathers of their children.
Nor is Matter of Wales v. Gallan (61 Misc 2d 681, supra) helpful to respondent’s cause. In that case the court upheld the 10-year limitations period of section 517; it merely ruled that the two-year period in which the mother could bring a paternity action should also be 10 years because of the alleged specially protected rights of illegitimate children. The court had no problem with extending the liability of the putative father, as the court stated (p. 685, n. 9): “ From the standpoint of protection of a respondent from suit, it is justifiable to extend his period of vulnerability in the fiscal interest.”
Respondent’s contention is therefore denied.
At issue too are respondent’s claim of former adjudication since a previous paternity suit brought by the natural mother was dismissed as untimely because it was commenced more than two years after the birth of the child and his insistence that inasmuch as the natural mother and child are not now recipients of public assistance the Commissioner of Social Services and the Corporation Counsel of the City of New York acting for him should be enjoined from proceeding herein.
The plea of former jeopardy is not available in filiation proceedings (Hodson v. Hoff, 266 App. Div. 228 [2d Dept., 1943], *1020 affd. without opn. 291 N. Y. 518). The same has been squarely held in Oregon (State v. Morrow, 158 Ore. 412 [1938], rehearing den. 158 Ore. 412) and Wisconsin (State ex rel. Mahnke v. Kablitz, 217 Wis. 231 [1935]). In Hoff {supra) the Appellate Division, Second Department, held that the dismissal of an earlier paternity proceeding without prejudice was in the nature of a “ nonsuit ” and did not constitute “ res judicata ” so as to bar a subsequent paternity proceeding in respect to the same child.
The respondent may, however, raise the defense of former adjudication and if he can show that an order of filiation was denied on the merits and that he was discharged, .such discharge effectively bars further proceedings (Thayer v. Overseers of the Poor, 5 Hill 443 [1843]; Schatkin, Disputed Paternity Proceedings, pp. 684-685 [4th ed., 1967]).
In the present case, the parties in the two suits are not the same and the intent of the Legislature as expressed in section 517 contemplates two potential petitioners. Moreover, the issue of paternity was not decided in the prior action and the Commissioner of Social Services was not a participant therein. The Statute of Limitations does not destroy the underlying obligation but merely bars the remedy (Allstate Ins. Co. v. Consolidated Mut. Ins. Co., 35 A D 2d 535 [1970]). In the case at bar, notwithstanding that the remedy available to the mother has lapsed, the obligation owing to the public.is still outstanding and the remedy viable. The previous case is therefore not a bar to the present suit.
Respondent’s final objection must also fail because the status of the parties as of the time of the filing of the petition or at the time of the birth of the child is controlling. If the facts existing at such times supported the right of the Commissioner to institute and maintain this proceeding, the present change in the financial circumstances of the mother and child will not now deprive the court of jurisdiction nor change the jurisdictional facts which existed at the commencement of the proceeding. In Ms petition the Commissioner alleges that on August 31, 1972, when the proceeding was instituted, the natural mother and child were public charges of the City of New York.
Many members of the Bar and Bench seem to be of the opinion that a Statute of Limitations of 10 years for the Commissioner of Social Services is.Yar too long. This court concurs and respectfully recommends to the State Legislature that it amend the act to reduce the period to 5 years from the date of birth of the cMld.

This rationale is most plainly expressed in the entire New York tax structure, which allows the State substantially greater rights as opposed to private creditors. (See, e.g., Tax Law, § 506 [Highway Use Tax lien declared paramount, to all prior liens]; see International Harvester Corp. v. Goodrich, 350 U. S. 537 [1956]; see, also, Marshall v. New York, 254 U. S. 380 [1920].)