OPINION OF THE COURT
Shirley Wohl Kram, J.
This paternity proceeding was commenced by the Commissioner of Social Services on behalf of the child Mathew H., now 10 years old, born January, 1970. The primary issue in this proceeding is whether there is clear and convincing proof that the respondent James M. is the father of this boy. However, this court first wishes to address an interesting question which developed in the course of the hearing. Without any motion or application to the court, Mathew H. was called as a witness. No objection was raised by respondent’s *1053 attorney except one relative to the infancy of the witness and his ability to understand the nature of an oath. A voir dire was conducted and the court found the witness could be sworn. This court now raises the issue of the propriety of a child, subject of a paternity proceeding, appearing in court in view of the long-established rule that evidence of resemblance between the child and the alleged father is inadmissible in New York. (Bilkovic v Loeb, 156 App Div 719.) While mindful of this rule, this court heard the child’s testimony since the attorneys did not raise the issue of resemblance. It then became apparent that the child testified to his relationship with the respondent, as to his visits with respondent as well as members of the latter’s family. He gave testimony also as to the nicknames respondent called him, and some gifts. Parenthetically, the court notes there was no resemblance between the child and respondent.
It appears that the ability of a child to testify in paternity proceedings is one of first impression in this jurisdiction. It is probable that the issue has not been reached because most petitions are brought when the child is too young to testify.
In 1976, section 522 of the Family Court Act was modified to give a putative father the right to bring a paternity proceeding until the child’s 18th birthday. A child’s testimony may now become extremely relevant and important in some situations. The Uniform Parentage Act has apparently recognized that a child’s testimony should automatically be received by allowing the child the right to bring a paternity proceeding on his own behalf (see Uniform Parentage Act, §§ 6, 9). The Uniform Parentage Act was adopted in 1973 by the National Conference of Commissioners on Uniform State Laws, section 9 thereof making a child a party to the action is a departure from the law of several States but was considered necessary by the commissioners in the light of recent Supreme Court decisions granting a child substantive rights vis-á-vis his father.
The right of an illegitimate child to bring action to establish his paternity was recognized in New York in Urquhart v Urquhart (196 Misc 664, affd 277 App Div 752) wherein the Supreme Court declared plaintiff to be the son of the defendants in an action for a declaratory judgment where the petitioner was a child born more than three years after the divorce of his mother and putative father. Agreeing in theory with the idea that a child should be a party in a paternity *1054 proceeding, the Judge albeit in dicta in Matter of Roe v Roe (65 Misc 2d 335, 341) stated "A more logical procedure for protecting the interests of the child would be to require that the child, by his representative, be a party to an action involving his paternity regardless of other parties”.
The relevance of the child’s testimonial evidence on one issue overrides its inadmissibility on another issue, namely the resemblance of the child to the alleged father. It should not preclude the child from testifying to either attack the respondent’s credibility or to show admission of paternity by conduct. (See Theresa J. v Troy M., 89 Misc 2d 909.)
The parties in this proceeding have a long period of acquaintance. They met in Ashville, North Carolina, where both were living at the time, and were employed by the same company. Petitioner alleges, and respondent does not dispute that they had sexual relations in his car and in his trailer which he purchased in 1968. Respondent testified that although he stopped dating petitioner in February, 1969, he continued taking her to and from work as a rider in his car. In May, 1969, respondent moved to New York, and in June the petitioner, pregnant at the time, also moved to New York. She visited respondent at his sister’s home where he lived. Respondent admits to being intimate with petitioner on many occasions throughout 1968 and 1969 while both were in New York and North Carolina. Respondent only denies having sexual relations in certain specific places and further testified that he stopped having relations with petitioner in February, 1969, but resumed in September, 1969. He confirmed that he obtained his present employment which he has had since 1970 through a friend of the petitioner. He testified too that when petitioner left the hospital after the birth of Mathew he went to pick them up and take them home.
It is petitioner’s testimony that she regularly had intercourse with respondent in the two-bedroom trailer he shared with his brother during the period of March, 1969 until May, 1969. She missed a menstrual period April, 1969, and testified that she informed the respondent of her condition in April or May, 1969. Petitioner states she continued sexual relations with respondent after she knew she was pregnant and after the child’s birth, until 1978. Respondent does not deny that he continued sexual relationship with petitioner over a period of several years, but alleges she saw other men too.
*1055 All the witnesses, namely respondent’s wife, sister, brother, cousin, petitioner’s sister and one Joyce B., a friend of both, were aware of the relationship between the parties. Since all were related to the parties for whom they testified, the court will give appropriate weight to their testimony. The witness Joyce B. is the only one unrelated to either party. She testified to having sexual relations with the respondent while he was seeing the petitioner and afterwards as well. She further testified that in June, 1969, the respondent told her he had made the petitioner pregnant.
The petitioner applied for public assistance in 1969 prior to the birth of the child. She subsequently requested support for herself and the child and states she named James M. as the father then and on all subsequent applications. She relates that in her various discussions with representatives of the Department of Social Services when her status was being reviewed, she always named Mr. M. as the father and claimed not to know his whereabouts. She testified that she was protecting Mr. M. since his salary was modest and she did not wish to burden him with the support of a child. Nevertheless, the Department of Social Services located the respondent in January, 1978 and persuaded the petitioner to co-operate with them in bringing this paternity action.
It was developed in the course of the trial that the respondent took Mathew to visit his brother in Virginia, his mother in North Carolina, and his sister in New York. The respondent’s wife took the child to a Christmas office party. The petitioner contends this is an admission of paternity. This court has found no New York authority on the issue of the putative father receiving the child into his family constituting evidence of paternity. The Family Court Act utilizes the theory of written acknowledgments only on the issue of Statute of Limitations. It is not contended that respondent’s conduct of receiving the child is an acknowledgment within the meaning of the Family Court Act, but a holding out of the child as his own, which is evidence that respondent himself believed the child to be his. The court agrees and finds the respondent’s conduct of receiving the child into his family, his statements to others concerning his fatherhood, and the nicknames he gave Mathew all constitute an admission of paternity by conduct. (See Uniform Parentage Act, § 4, subd [a], par [4] [wherein there is a presumption of paternity when "while the child is under the age of majority, (the putative father) *1056 receives the child into his home and openly holds out the child as his natural child”].)
The respondent has raised the issue of the 10-year Statute of Limitation allowed the Department of Social Services as being an unfair burden on respondent. This statute has withstood many attacks on this ground and has been upheld for the protection of the public purse. (See People ex rel. Kirkpatrick v Crowley, 25 App Div 175; Matter of Commissioner of Welfare of City of N. Y. v Jones, 73 Misc 2d 1014.) In fact it should be noted that there is presently a bill before the Legislature which would amend section 517 of the Family Court Act making the 10-year Statute of Limitations applicable to all petitioners in paternity proceedings (presently the mother has 2 years, while the Commissioner of Social Services has 10 years, but the putative father has until the child’s 18th birthday).
In view of the foregoing, this court makes the finding based on clear and convincing proof, that respondent James M. is the father of Mathew H.