Saul Moskoff, J.
Respondent in this filiation proceeding questions the constitutionality of section 517 of the Family Court Act, which provides two different limitation periods for the bringing of a paternity proceeding, depending upon whether the petitioner is a public welfare official (10 yeárs) or any other person permitted by section 522 of the act to originate .such a proceeding (2 years).[1]
The case arises in the following context: Petitioner commenced the paternity proceeding in April, 1972, to procure an order declaring respondent the father of her three children. Respondent denied paternity as to each of the three children.
At the time the petition was filed, the two-year Statute of Limitations had already run out with respect to two of the three children. Petitioner, however, alleged prior acknowledgment of paternity by respondent. This allegation, if proved, would toll the statute. Respondent, however, has denied it.
On February 5, 1973, an oral motion was made, by the Assistant Corporation Counsel present, to join the Commissioner of .Social Services as a copetitioner. Respondent’s attorney objected to the granting of such motion upon several grounds — *944 among these being that the 10-year Statute of Limitations provided in subdivision (b) of section 517 is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment.
An adjournment was granted to afford both sides an opportunity to .submit briefs on the motion. Since the constitutionality of a New York statute is questioned, the Attorney-General was notified and has also submitted a brief.
Respondent’s main point is that section 517, insofar as it makes a putative father -subject to a tWo- or ten-year period of liability depending-solely upon the mother’s income level at the time the action is brought, erects an arbitrary classification which cannot stand under the Equal Protection Clause of the Fourteenth Amendment.
Petitioner’s reply is that the classification contained in section 517 is a “ reasonable ” one — the 10-year Statute of Limitations applicable to actions commenced by the Welfare Commissioner being warranted by the State’s interest in protecting the public treasury.
The Attorney-General’s brief echoes petitioner’s argument and supplements it with citations to cases which have upheld legislative decisions to grant greater procedural rights to municipal bodies -suing in the public interest than are granted to private litigants suing on identical causes of action.
The court’s conclusion is that the arguments made by petitioner and by the Attorney-General are valid. Respondent, on -the other hand, makes an appealing policy argument but otherwise misconstrues the judicial test which courts must apply in determining the constitutional validity of legislative classifications. The essence of this test is that “ unless a classification is arbitrary and not founded. on any substantial distinction * * * which suggests the necessity or propriety of1 (classification), a court has no right to interfere with the exercise of legislative discretion.” (16 Am. Jur. 2d, Constitutional Law, § 496; emphasis added).
I. RESPONDENT’s EQUAL protection argument
Matter of Wales v. Gallan (61 Misc 2d 681 [Fam. Ct., Richmond County, 1969]), should be considered at the outset, in view of the close analogy which that court’s decision bears to respondent’s argument in the present case.
In Wales v. Gallan the constitutionality of the two-year limitation period applicable to petitioners other than the Commissioner of Social Services was challenged on equal protection grounds. The court agreed with this argument and decided that *945 the benefit of the more favorable 10-year statute should be extended to all petitioners in paternity proceedings. Though it was .apparently the petitioner mother who raised the constitutional objections to section 517 in the Wales case, the decision is based on the rationale that section 517 discriminates irrationally against the unacknowledged illegitimate child whose mother is not in the'public charge category bef ore its 10th birthday. The court said (p. 684): “ It is entirely irrational and arbitrary to differentiate in the right of a child to the possible benefits of a suit to establish his paternity, depending on whether the child or his another is or is not a public charge during his first 10 years. The child’s status for the rest of his life may be adversely affected on a basis that lacks rational connection with his deprivation. It is the effect of paternity proceedings on the child which renders this limitation provision unconstitutionally discriminatory, even though a distinction in the limitation period for private and governmental petitioners may be valid in other types of suits ”.
Wales, however, does not explore the constitutionality of legislative classifications in that it does not (a) make a substantial inquiry into the legislative purpose underlying the statutory classification and (b) consider whether the classification is a “ reasonable ” one when viewed in terms of the legislative purpose.
That such an inquiry is not only relevant but mandatory in cases of this type was made clear by the Supreme Court in McGowan v. Maryland (366 U. S. 420, 425-426 [1961]): “ The Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrevelant to the achievement of the State’s objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.”[2]
Wales says, in effect, that the classification contained in section 517 is “ irrational ” because it incidentally furnishes some illegitimate children with a better chance than others of having their paternity established in a filiation proceeding. But it *946 would appear fairly certain that the legislative purpose in enacting the classification contained in section 517 was not that of assuring to all illegitimate children equal chances of having their paternity established. Nor can it be assumed that the Legislature was particularly concerned with making all fathers of illegitimate children equally liable to paternity suits — since it provided exceptions to the general two-year Statute of Limitations (a) where the putative father had previously acknowledged paternity, and (b) where the child was liable to be a public charge and a suit was brought by the Welfare Commissioner.
What, then, was the Legislature’s purpose in enacting section 517 ? Though one can only conjecture at the true intent, note is taken of the statement in American Jurisprudence, Second Edition (vol. 10, Bastards, § 75), that “Filiation statutes are generally considered to represent an exercise of the police power of the state for the primary purposes of securing the support and education of an illegitimate child and of protecting society by preventing such child from becoming a public charge.”
When the classification set forth in section 517 is examined in terms of the above objectives, it appears that the statute does indeed provide a very reasonable scheme for assuring that all illegitimate children will receive support and education, and that the burden of providing support will not have to be shouldered by the taxpayer where either the child’s mother or putative father is capable of providing it. Therefore, on its face, section 517 appears to present a classification which is quite reasonable in terms of the presumed legislative objective in enacting it.
It might yet be argued that the Legislature could have accomplished its objective to substantially the same degree without having conferred on the Welfare Commissioner the benefit of a 10-year Statute of Limitations. It can readily be imagined, for example, that were the Commissioner held to the same two-year limitation period applicable to other petitioners, there might be no substantial decline in the number of paternity suits instituted by the Commissioner but merely a greater diligence observed on his part in originating such proceedings.
The argument fails, however, to shake the constitutionality of section 517, because it is not unreasonable to assume that the Legislature,' in according the Commissioner the benefit of a 10-year limitation period, was not specifically concerned with the case of illegitimate children who become public charges between their 2d and 10th years. Cf. McGowan v. Maryland (366 U. S. 420, 426, supra): “A statutory discrimination will not be set *947 aside if any state of facts reasonably may be conceived to justify it.”[3]
The court concludes that the dual Statute of Limitations provided in section 517, (a) is reasonable when viewed in terms of the presumed legislative objective in enacting it, and (b) is not arbitrary or invidious.
II. THE DUE PROCESS ARGUMENT
An issue which was raised at least implicitly in respondent’s brief, and which merits full consideration, is whether the 10-year Statute of Limitations does not have the effect Of denying due process of law to certain respondents in paternity proceedings.
As a practical matter, it can be seriously doubted that a man who is brought into court on a paternity petition eight or 10 years after the occurrence of the intercourse alleged in the complaint will be able to produce evidence and witnesses for events going back this long. The ability to produce such evidence will often be crucial to him in his attempt to rebut petitioner’s allegation of paternity. Moreover, it has been said that accusations of paternity are frequently fabricated. Recent polygraph studies conducted in Chicago and in Orange County, California, indicate that petitioners’ denial of having had sexual relations with men other than respondent during the conception period was perjured in roughly 40% of the cases studied. (Cf. Sehatkin, Paternity Proceedings and the Lie Detector, N. Y. L. J., Dec. 11 & 12,1969.) The incidence of fabrication may well be greater in actions brought at the instigation of the Commissioner of Social Services, where the petitioner has declined for years to bring an action on her own behalf.
Respondent’s main source of[1] exculpatory evidence in such a case will be the exclusionary results of blood-grouping tests. But even with the recent discovery of new blood types, these tests are still only capable of exonerating 6 out of every 10 incorrectly accused men. (Cf. Sehatkin, Disputed Paternity Proceedings [4th ed.], p. ix.) This leaves 4 of every 10 innocent respondents threatened with a false finding of paternity unless they can marshall some evidence to rebut petitioner’s claim.
The most common method of rebuttal in paternity cases is to establish access by other men. In New York, however, respondent’s own testimony on this issue is inadmissible unless corrob *948 orated by other evidence or witnesses. (Of. Family Ct. Act, § 531.)[4] Where the action is brought many years after the events occurred, the corroborating witnesses who might previously have been available to testify on respondent’s behalf may well have disappeared or be reluctant (by reason of marriage, etc.) to give testimony of sexual relations with petitioner. Thus, from a practical standpoint, it is abundantly clear that an innocent respondent who is brought into court on a paternity petition under the 10-year Statute of Limitations in subdivision (b) of section 517 may be subjected, in as many as 4 out of 10 cases, to what is potentially a drumhead trial.
That a gross unfairness may inhere in some proceedings brought under the 10-year Statute of Limitations is probable. Nonetheless, this does not compel the conclusion that the 10-year statute is unconstitutional under the Due Process Clause.
Essentially the same considerations of legislative prerogative and of “ reasonableness ” must be taken into account in ruling on the constitutionality of a Statute of Limitations as were discussed previously in relation to the constitutionality of legislative classifications. Research has turned up one Federal case which deals at length with the constitutionality of a Statute of Limitations and discusses in some detail the factors to be considered in determining whether such a statute measures up to the standards of due process. In this case, Hargraves v. Brackett Stripping Mach. Co. (317 F. Supp. 676 [E. D. Tenn., 1970]), the plaintiff (not, as in the case before us, the respondent) was challenging the Statute of Limitations on due process and equal protection grounds. The action arose out of injuries which the plaintiff sustained in 1968 while using a machine manufactured by defendant’s predecessor in 1928. Defendant contended that the action was barred by a former Tennessee one-year Statute of Limitations, which commenced to run from the date of the sale of the defective product rather than from the date of plaintiff’s injuries. Plaintiff maintained that the one-year statute, if so construed, was unconstitutional. The court held the statute to be constitutional, stating its reasoning as follows (pp. 682-683):
“ The legislative body, in enacting [statutes of limitations], may weigh the conflicting interest between one person’s right to enforce an otherwise valid claim and another person’s right *949 to "be confronted with any claim against him before the lapse of time has likely rendered unavailable or difficult the matter of obtaining or presenting proof. Any balance of these conflicting interests which is not arbitrary or capricious is within the legislative authority and not subject to constitutional attack for lack of due process. * * *
“ Thus the relevant test of due process here is basically the test of reasonableness. If in balancing the conflicting interests of the parties reason can be established, or, stated in reverse, if a lack of arbitrariness can be established * * * no constitutional attack on such legislation would lie.
“ This Court is of the opinion that legislation adopting the date of the wrongful act or the date of the sale of the defective product as the inception for the running of a statute of limitations cannot be said to be so arbitrary or capricious as to fall under the ban of the Due Process Clause. A statute of limitations must be judged in the light of the broad class of cases to which it applies and if it is reasonable with respect to the class, it will not be judged unreasonable merely because it is deemed to operate harshly in a particular or exceptional instance. Lamb v. Powder River Livestock Co. (C. A. 8) 132 F. 434; Allen v. Mottley Construction Co., 160 Va. 875. In reaching this conclusion it should be ¡emphasized that the role of the Court is not to pass the wisdom or lack of wisdom of the legislation involved. The courts do not sit to review the wisdom of legislation or regulation by public bodies, for these matters address themselves solely to the legislative or regulating body. United States v. American Union Transport, 327 U. S. 437 (1945).”
The rationale cited by the court in Hargraves for sustaining the constitutionality of a .Statute of Limitations which, in effect, barred plaintiff’s claim before he had even had cause to assert it, applies with equal force to the 10-year Statute of Limitations which is herein challenged. Even if taken as established that (a) the 10-year statute operates with exceptional harshness upon respondents in particular cases and (b) the statute clearly favors the interest of the Commissioner of Social Services in bringing paternity actions to relieve the public of the burden of supporting illegitimate children over the interest of putative fathers in being confronted with paternity allegations “ before the lapse of time has likely rendered unavailable or difficult the matter of obtaining or presenting proof ”, this court would nonetheless be overstepping its constitutional bounds were it to declare the 10-year ¡statute unconstitutional. The 10-year limitation period — though in the court’s estimation it may appear quite lacking in legislative wisdom — undeniably incorporates *950 some apparent degree of “ reason ” when viewed in terms of the presumed legislative purpose in enacting it. Because the statute meets such minimal due process standards, it is the court's duty to sustain it.
It hears notice, however, that whereas the court in Hargraves was ruling on the due process issue which had been raised by the plaintiff in a civil action, in the case before us it is the defendant in a “ quasi-criminal ” proceeding who is raising the issue. This distinction may be important, since the Due Process Clause has been applied more frequently to vindicate the rights of the accused in criminal proceedings than to assure potential plaintiffs in civil actions the right to a forum. Cf. Boddie v. Connecticut (401 U. S. 371 [1971]), especially the dissenting opinion of Justice Black. With this in mind, it is appropriate to analogize the position of respondent in the ease before us to that of a defendant in a criminal ease who is prosecuted many years after the commission of the alleged offense.
Although research on this point has not turned up many relevant cases, from the authority found it appears that defendant's due process objections to a delayed indictment may be Sustained if, and only if, he can demonstrate actual prejudice in preparing his defense. See United States v. Iannelli (461 F. 2d 483 [2d Cir., 1972]): For preindictment delay to Constitute a denial of due process actual prejudice in preparing a defense must be shown. However, in Iannelli it was held that a nearly five-year delay between the Government's discovery of the alleged unlawful acts and the return of an indictment did not constitute a denial of due process in view of the failure of defendants to show prejudice in preparing a defense as a result of such delay. Séé^ also, United States v. Skillman (442 F. 2d 542, 556 [8th Cir., 1971], cert den. 404 U. S. 833): “ So long as the applicable statute of limitations is observed, delay of indictment, without more, does not constitute a denial of due process.”
From the above cases the court is led to conclude that (a) while in an exceptional case wherein the putative father was able tó show [1] ‘ actual prejudice in preparing a defense ” the court might be justified in dismissing a paternity petition on due process grounds, (b) in the normal case no such argument would lie, and (c) the above cases furnish no ground for declaring the 10-year Statute of Limitations itself unconstitutional.
in. RESIDUAL ISSUES
(A) SHOULD RESPONDENT BE SUBJECT TO SUIT UNDER 10-YEAR STATUTE OF LIMITATIONS WHERE MOTHER ADDS COMMISSIONER OF SOCIAL SERVICES AS COPETITIONER f
*951 Respondent contends in his brief that the Legislature, in enacting a separate statute of limitations for the Commissioner of Social Services under subdivision (b) of section 517 did not intend for this statute to be invoked in cases where the mother institutes the paternity proceeding and later moves to add the Commissioner as copetitioner. Therefore, he argues, the petitioner’s motion to add the Commissioner as copetitioner should be denied, or else granted subject to the proviso that the joinder of the Commissioner will not operate to revive the mother’s cause of action if it is later[5] found to have been barred under the two.year Statute of Limitations.
Respondent may well be correct in his contention that the Legislature did not intend — or, more likely, did not foresee — the use of the 10-year statute in the procedural context in which petitioner now seeks to invoke it. Be that is it may, the plain language of subdivision (b) of section 517 indicates that, were the mother to be granted leave to discontinue her action at this point in the proceedings and were the Commissioner thereafter to initiate a new proceeding in her behalf, the 10-year statute would then be applicable to the action commenced by the Commissioner. It appears, from the willingness of the Commissioner to join with the petitioning mother in the instant proceeding, that the Commissioner would also be likely to institute a separate paternity action were the motion to add him. as a copetitioner in this proceeding to be denied.
(B) EFFECT OF DELAY IN MOVING TO ADD THE COMMISSIONER.
Respondent also argues that the motion to add the Commissioner should be denied on the ground that it was not made at an early point in the proceedings, and thus has prejudiced respondent in that he has relied on the Statute of Limitations, coupled with his asserted lack of acknowledgment, as a complete defense to petitioner’s action insofar as two of the three children involved are concerned.
As to this contention reference is made to a somewhat similar case, Matter of Comr. of Welfare of City of N. Y. v. Meyers (48 Misc 2d 162 [Fam. Ct., N. Y. County, 1965]), wherein a motion to add the mother as a copetitioner was granted.
In Meyers the paternity petition was filed by the Commissioner, with the mother’s name stated in parenthesis, a year after the child’s birth. Pretrial examination was held, at which it was determined that the mother was not likely to become a public charge. Thereupon, the Commissioner moved to add the *952 mother as a copetitioner. Although by that time the two-year Statute of Limitations for an original petition by the mother had expired, it was held that the court still had power to correct mistakes, omissions, defects, and irregularities, and to add parties at any stage of the proceeding (cf. CPLR 104, 1003, 2001; Family Ct. Act, § 165). The court reasoned as follows (pp. 165-166):
“ The respondent has not suffered by the delay [in adding . the mother as a new party]. This is not an instance where, after the Statute of Limitations has run, a party comes into the litigation pressing a separate, distinct and new cause of action. This proceeding was brought for two purposes: first, to obtain a declaration of paternity for the child, and second, for the support of the child. Obviously, there is a unity of interest in all these objectives between the Department of Welfare, the mother and the child. * * *
“In New York Cent. R. R. v. Kinney (260 U. S. 340, 346) Justice Holmes said: ‘ Of course an argument can be made on the other side, but when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of the opinion that a liberal rule should be applied.’ * * *
“ CPLR 104 provides that the Civil Practice Law and Rules shall be liberally construed to receive the just, speedy and inexpensive determination of every civil judicial proceeding. Section 165 of the Family Court Act makes them applicable to these proceedings. CPLR 1003 provides that ‘ Parties may be added or dropped by the court, on motion of any party or on its own initiative, at any stage of the action and upon such terms as may be just.’ ”
Meyers is, of course, distinguishable from the case at bar. In Meyers there was no culpable delay on the part of the party moving to add, and the respondent had no reason to rely on the Statute of Limitations as a defense.
On the other hand, the liberal policy expressed in CPLR 1003 may be taken as applying to the present case as well — particularly if, in the court’s view, petitioner’s delay was not deliberate, or respondent has established no actual prejudice as a result of the (10-month) delay in making the motion.
Accordingly, the respondent’s contention that the dual Statute of Limitations as set forth in section 517 of the Family Court Act is unconstitutional is rejected and the motion to join the Commissioner of Social Services as copetitioner is granted..

. Section 517 of the Family Court Act., Time for instituting proceedings.
“ (a) Proceedings to establish the paternity of the child may be instituted during the pregnancy of the mother or after the birth of the child, but shall not be brought after the lapse of more than two years from the birth of the child, unless paternity has been acknowledged by the father in writing or by furnishing support.
“ (b) If the petitioner is a public welfare official, the proceeding may be originated not more than ten years after the birth of the child.”
Note: Under section 522 of the act a public welfare official may only institute a paternity proceeding where “ the mother or child is or is likely to become a public charge ”.

. See, also, Dandridge v. Williams (397 U. S. 471 [1970]); Rinaldi v. Yeager (384 U. S. 305 [1966]); Baxstrom v. Herold (383 U. S. 107); Carrington V. Rash (380 U. S. 89); Matter of Van Berkel v. Power (16 N Y 2d 37 [1965]).

. Cf., also, 16 Am. Jur. 2d, Constitutional Law, § 499: “ The fact that a statute discriminates in favor of certain classes does not make it arbitrary if the discrimination is founded upon a reasonable distinction, or if any state of facts reasonably can be conceived to sustain it. * * * the equal protection clause goes no further than the invidious discrimination,”

. Section 531 of the Family Court Act: “ If the respondent shall offer testimony of access by others at or about the time charged in the complaint, such testimony shall not be competent or admissible in evidence except when corroborated by other facts and circumstances tending to prove such access.

. i.e., when the issue of “ acknowledgment ” has been determined as to the two oldest children- in this case.