Frances Annette PICKETT,
Plaintiff-Appellee,

v.

Braxton BROWN, Defendant-Appellant,

William M. Leech, Jr.,
Intervenor-Appellant.

Supreme Court of Tennessee.

Aug. 30, 1982.

James R. McGarrh, Jr., Memphis, for defendant-appellant.

Lee Breckenridge, Asst. Atty. Gen., Nashville, for intervenor-appellant.

Harold W. Horne, Memphis, for plaintiff-appellee.

## OPINION

DROWOTA, Justice.

This appeal seeks to uphold the constitutionality of the two-year statute of limitations upon an action to establish paternity, found in TCA § 36–224(2).[1] The action was

---

1. The statute reads:

Proceedings to establish the paternity of the child and to compel the father to furnish support and education for the child may be instituted during the pregnancy of the mother or after the birth of the child, but shall not be brought after the lapse of more than two (2) years from the birth of the child, unless paternity has been acknowledged by the father in writing or by the furnishing of support. Provided, however, that the department of human services or any person shall be empowered to bring a suit in behalf of any child under the age of eighteen (18) who is, or is liable to become a public charge.

brought in May, 1978, to establish the paternity and obtain an order for support of a child born in November, 1968. The defendant argued that since the action was brought more than two years after the child's birth, and he had never acknowledged the child in writing or by furnishing support, the action was barred. The plaintiff mother filed a motion challenging the constitutionality of the section. She sought to amend her petition so as to bring it in the name of the child.

Plaintiff's grounds for urging unconstitutionality were: (1) that the two-year period denied her and her son equal protection of the law under the federal and state constitutions; (2) that it amounted to cruel and unusual punishment (not seriously pressed by plaintiff); and (3) that it deprived the child of due process of law in cutting off his rights before he was old enough to exercise them. Her argument was basically that children born out of wedlock were denied substantial benefits accorded to other children, since children born in wedlock may sue their fathers for support throughout their minority.

The Attorney General was allowed to intervene, since constitutionality was in issue. He argued that plaintiff had no standing to challenge the constitutionality of the exception for public charges, but that in any event, such exception was constitutional as an extension of the sovereignty of the state and because there was a rational basis for making this exception. Further, the general two-year period was constitutional because it was not a limitation upon illegitimates' right to support, which was equal to that of legitimate children. Rather, the limitation was upon establishing paternity, and was justified by the state's interest in preventing litigation of stale or spurious claims. The defendant separately argued that the statute merely limited "the time in which a mother who is able to support her

child may seek reimbursement from the alleged father," and the time in which the state may seek reimbursement.

The juvenile court allowed the child to be added as a plaintiff, and held the two-year portion of the statute unconstitutional. The effect is to allow an action to be brought throughout the child's minority. The court reasoned that an illegitimate child has a right, continuing throughout minority, to support from his father. The right is enforced by an action brought under TCA § 36–222. However, such an action must, in general, be brought within two years of the child's birth, while no such limitation is imposed upon a child born in wedlock. The result is that the Legislature has treated illegitimate children differently than legitimate children. Additionally, an illegitimate child's right to support may be cut off by his mother's failure to act, with no fault on the part of the child.

The trial court also ruled that the two-year period put two state interests—the welfare of its children and preventing stale claims—in conflict. The court held that the stale claim reasoning failed because the state or any person may sue during eighteen years, when the child becomes a public charge. The court also found discrimination between children born out of wedlock, some of whom are public charges and some of whom are supported privately; even if the mother did support the child, this did not terminate the father's equal obligation to support.

The court allowed an interlocutory appeal by certifying that the constitutionality of TCA § 36–224(2) was the sole determinative question of law in the proceedings. TRAP 9, TCA § 16–408.

In ruling on the equal protection challenge to the statute, we begin our discussion with *Mills v. Habluetzel,* —— U.S. ——, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982).[2]

---

2. Because of the clarity and relevance of the *Mills* opinion we do not find it necessary separately to review and comment upon the line of cases decided by the Court in recent years, dealing with classifications based upon illegitimacy. *See Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct.

518, 58 L.Ed.2d 503 (1978); *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); *Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976); *Jimenez v. Weinberger,* 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974); *New Jersey Welfare Rights*

This case held unconstitutional a Texas statute, § 13.01 of Chapter 13, Title 2 of the Texas Family Code:

A suit to establish the parent-child relationship between a child who is not the legitimate child of a man and the child's natural father by proof of paternity must be brought before the child is one year old, or the suit is barred.

This statute was challenged on equal protection and due process grounds. Upholding the equal protection challenge, the Court did not discuss the due process issue.

The Texas Family Code, governing determinations of paternity and entitling illegitimate children to seek such a determination and establish a paternal duty of support, was Texas' response to the Court's earlier opinion in *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973). Before *Gomez,* illegitimates in Texas had had no judicially enforceable right to support from the natural father. As the Court stated in *Gomez,*

... a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. We therefore hold that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother.

*Id.* at 538, 93 S.Ct. at 875, 35 L.Ed.2d at 60.

Thus, in *Mills,* the Court had to determine whether it was constitutional for Texas to grant a right to legitimation and support, but then place a one-year statute of limitations upon the bringing of the action. The Court held that this scheme was unconstitutional. "It would hardly satisfy the demands of equal protection and the holding of *Gomez* to remove an 'impenetrable barrier' to support, only to replace it with an

opportunity so truncated that few could utilize it effectively." —— U.S. at ——, 102 S.Ct. at 1553. Although Texas law permitted the paternity action to be brought by any person with an interest in the child, the mother would usually be the person who would sue. For her, there would be such obstacles to bringing a suit within a year that she would effectively be denied the opportunity to sue. The hindrances listed by the Court included financial difficulties, continuing affection for the father, shame and embarrassment, and confusion. Since *any* suit had to be brought within a year, such time was not long enough for the state, once a claim should be assigned to it, to take steps to sue.

The Court also held that one year was "not substantially related to the State's interest in avoiding the prosecution of stale or fraudulent claims." *Id.* at ——, 102 S.Ct. at 1555. Problems of proof do not "justify a period of limitation which so restricts those rights as effectively to extinguish them." *Id.*

Considering this holding, we look at other language in the Court's opinion which would cast light upon a two-year limitation:

The fact that Texas must provide illegitimate children with a bona fide opportunity to obtain paternal support does not mean, however, that it must adopt procedures for illegitimate children that are coterminous with those accorded legitimate children. Paternal support suits on behalf of illegitimate children contain an element that such suits for legitimate children do not contain: proof of paternity. Such proof is often sketchy and strongly contested, frequently turning upon conflicting testimony from only two witnesses. Indeed, the problems of proving paternity have been recognized repeatedly by this Court. *Parham v. Hughes,* 441 U.S. 347, 357, 361 [99 S.Ct.

*Organization v. Cahill,* 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543 (1973); *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 33 L.Ed.2d 56 (1973); *Weber v. Aetna Cas. & Sur. Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); *Labine v. Vincent,* 401 U.S. 532, 91 S.Ct. 1017,

28 L.Ed.2d 288 (1971); *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); *Glona v. American Guarantee & Liability Ins. Co.,* 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968).

1742, 1748–1749, 60 L.Ed.2d 269] (1979); *Lalli v. Lalli*, 439 U.S. 259, 269 [99 S.Ct. 518, 525, 58 L.Ed.2d 503] (1978); *Trimble v. Gordon*, 430 U.S. 762, 772 [97 S.Ct. 1459, 1466, 52 L.Ed.2d 31] (1977); *Gomez v. Perez*, [409 U.S.] at 538 [93 S.Ct. at 875].

Therefore, in support suits by illegitimate children more than in support suits by legitimate children, the State has an interest in preventing the prosecution of stale or fraudulent claims, and may impose greater restrictions on the former than it imposes on the latter. Such restrictions will survive equal protection scrutiny to the extent they are *substantially related to a legitimate state interest.* See *Lalli v. Lalli, supra,* [439 U.S. at 265, [99 S.Ct. at 523]; *Trimble v. Gordon, supra* [430 U.S.] at 767 [97 S.Ct. at 1463]; *Mathews v. Lucas,* 427 U.S. 495, 510 [96 S.Ct. 2755, 2764, 49 L.Ed.2d 651] (1976). The State's interest in avoiding the litigation of stale or fraudulent claims will justify those periods of limitation that are sufficiently long to present *a real threat of loss or diminution of evidence, or an increased vulnerability to fraudulent claims.*

The equal protection analysis ..., therefore, focuses on two related requirements. *First, the period for obtaining support ... to illegitimate children must be sufficiently long in duration to present a reasonable opportunity for those with an interest in such children to assert claims on their behalf. Second, any time limitation placed on that opportunity must be substantially related to the State's interest in avoiding the litigation of stale or fraudulent claims.*

*Id.* at ————————, 102 S.Ct. at 1553–1554, 1555 (emphasis added).

During the pendency of the *Mills* case, the Texas Legislature increased the limitation period from one to four years. Thus, five Justices joined in a separate opinion to specify that by disapproving of a one-year statute, the Court did not wish to imply approval of a period longer than one year. We take this to mean simply that the Court does not wish to prejudge any other period

or any other statute, but would consider each one on its own merits and on how well it meets the problems discussed by the Court in *Mills.* The separate opinion notes the Court's listing of circumstances surrounding the birth of an illegitimate child, which made a one-year period unconstitutional. However, other circumstances could continue for a longer period after birth.

One circumstance was the State's interest, in addition to preventing stale and fraudulent claims, in insuring that genuine claims are satisfied. This strong interest in doing justice and reducing the number of people on the welfare rolls, is "peculiar to the State itself." *Id.* at ————, 102 S.Ct. at 1557.

A second point favoring a longer period was the fact that a paternity suit was one of the few causes of action under Texas law where the limitation period was not tolled during the minority of the plaintiff. "Of all the difficult proof problems that may arise in civil actions generally, paternity, an issue unique to illegitimate children, is singled out for special treatment." *Id.*

A third factor which could exist past the first year of life was the relationship among the parties: a continuing relationship between the parents, financial support from the father, or perhaps the child's living with the father or his relatives.

In examining the constitutionality of a two-year, as opposed to a one-year, statute, it would also be instructive to review various state court decisions, even though these preceded the *Mills* decision.

1. The period held constitutional in *In re People in the Interest of L.B.,* 179 Colo. 11, 498 P.2d 1157 (1972), *appeal dism. sub nom. Colorado in the Interest of L.B. v. L.V.B.,* 410 U.S. 976, 93 S.Ct. 1497, 36 L.Ed.2d 173 (1973), was five years from the child's birth, unless the father had acknowledged paternity in writing or by furnishing support. The Colorado Supreme Court distinguished the duty of support, owed equally to legitimate and illegitimate children, from the threshold establishment of the paternal relationship, a duty borne by illegitimates

only. The burden of proving this relationship and thus the obligation to support is greater "where paternity is denied by the putative father. The difference in the two situations and the uncertainty of relationship attendant on illegitimacy is sufficient to justify treatment as two different classes for constitutional purposes." 498 P.2d at 1161.

The court held, with citations, that legislatures may enact statutes of limitations which "put infants and adults on the same footing, ... and this is the effect of a statute containing no savings clause exempting infants." *Id.*

2. A landmark state case on this subject is *Cessna v. Montgomery*, 63 Ill.2d 71, 344 N.E.2d 447 (1976). The Illinois Code provided that *once paternity was established,* legitimate and illegitimate children had an equal right to support. An action to determine paternity had to be brought within two years after the child's birth, *except* that where the father had acknowledged the child under oath or provided support, the action could be brought within two years of such an act on the father's part. The putative father's absence from Illinois also tolled the running of the statute.

The mother challenged the limitation on equal protection and due process grounds. The court reviewed the United States Supreme Court cases decided prior to that time, the most relevant of which was *Gomez v. Perez, supra,* noting that "[t]his appeal, therefore, picks up where *Gomez* left off. The broad question here is to what extent a State may limit or burden the right of an illegitimate child to bring a paternity action." 344 N.E.2d at 452. The court was aware

> [t]hat proof of paternity places a burden on illegitimate children not shared by legitimate children `...; it is also unavoidable. (H. Krause, Illegitimacy: Law and Social Policy 82 (1971); Note, *Illegitimacy and Equal Protection,* 49 N.Y.U.L.Rev. 479, 511 (1974).) Illegitimate children differ fundamentally from legitimate children in that at birth they have no legal relationship to their natural father.

In the language of equal protection analysis, legitimate and illegitimate children are not similarly situated classes. It is not only entirely reasonable but essential that the State require proof of the paternity of illegitimates as a condition to asserting an otherwise equal support right.

*Id.* at 451–452.

The reasoning employed by the Illinois court in testing the validity of the two-year limitation period is quite similar to that found in *Mills v. Habluetzel.* First, a state may constitutionally limit the time during which an illegitimate child may bring a paternity action. Second, the court recognized the propriety of the state's interest in preventing litigation of stale or fraudulent claims. Third, it was stated that the Legislature could establish "any limitation period it deems appropriate so long as it is not so short as to be tantamount to the impenetrable barrier proscribed in *Gomez.*" *Id.* So long as a limitation period cannot be said as a matter of law to be too brief, a court has no power to substitute its judgment for that of the Legislature. "The fact that the support right potentially forfeited is an important one does not authorize this court to select a longer period. We could only remove the limitation altogether ...." *Id.*

In light of these principles, basically the same as those voiced by the Supreme Court in *Mills,* the court found that Illinois' two-year statute did not unconstitutionally deny equal protection. The Constitution did not "compel" the court to strike down the statute, *id.* A state study had found, "even with the two-year period, that paternity actions are beset with coercion, corruption and perjury.... It may well be that the longer the period between birth and suit the greater the possibility of fraud. At the very least, a defendant's problems of proof are substantially increased." *Id.*

The due process discussion found in *Cessna* will be mentioned below.

3. The Iowa Supreme Court held its statute constitutional in *State v. Witkowski,* 256 N.W.2d 216 (Iowa 1977), which relied heavily upon the *Cessna* opinion. The statute, § 675.33 of the Iowa Code, read:

Proceedings to enforce the obligation of the father shall not be brought after the lapse of more than two years from the birth of the child, unless paternity has been judicially established, or has been acknowledged by the father in writing, or by the furnishing of support.

After reviewing the United States Supreme Court cases which had been decided, the court found that the two-year statute did not amount to an insurmountable barrier such as that which had existed in *Gomez v. Perez, supra*. It was, instead a *method* of proof and time limitation for proving paternity. Agreeing with the rationale found in *Cessna*, the court found that the Iowa statute was " 'carefully tuned to alternative considerations,' " 256 N.W.2d at 224, a factor which had been found important in United States Supreme court cases. This statute was "carefully tuned" because it provided three exceptions to the two-year period, thus alleviating potential hardships to illegitimates who fit within such exceptions.

4. *Thompson v. Thompson*, 285 Md. 488, 404 A.2d 269 (1979), *app. dismissed,* 444 U.S. 1062, 100 S.Ct. 1002, 62 L.Ed.2d 745 (1980), upheld Maryland's statute requiring action to be brought within two years of the child's birth, except where the putative father had acknowledged paternity in writing or had provided support, in which case the suit could be brought within two years of the last such act by the father. Md.Code Art. 16, § 66(e) (1973). The statute was part of a revision of the law which had as one of its purposes "the promotion of the general welfare and best interests of [illegitimate] children by securing to them, *as near as practical,* the same right to support, care and education as legitimate children." *Id.,* § 66A (emphasis added). The court discussed the purpose of statutes of limitations; as to the statute specifically in question, it noted:

Memories do fade with the passage of time. Circumstances change, too. After the lapse of a number of years from contact with the mother of an illegitimate child an accused male might have substantial difficulty in establishing that he was not the only individual who could have sired the child in question. This might be because changed family circumstances could cause individuals who previously would have so testified to be unwilling to state that they had sexual intercourse with the child's mother at a time when they could have sired the child in question.... We find no fundamental right of the child affected by this statute.

404 A.2d at 273. *Thompson* also discussed the due process challenge, with which we shall deal below.

5. An interesting interpretation of legislative purpose is found in *Matter of Mores v. Feel,* 73 Misc.2d 942, 343 N.Y.S.2d 220 (Fam.Ct.N.Y.Co.1973). Under § 517 of the New York Family Court Act, action had to be brought within two years after the child's birth, unless the father had acknowledged paternity in writing or by furnishing support. However, if the mother or child was or was likely to become a public charge, the public welfare officials could sue within ten years after the birth. In this case, the putative father challenged the constitutionality of this distinction, which affected the liability of a father based upon the mother's income level.

The court criticized *Matter of Wales v. Gallan,* 61 Misc.2d 681, 306 N.Y.S.2d 614 (Fam.Ct. Richmond Co. 1969). That case had held the two-year period unconstitutional, extending the limit for any suit to ten years. That case was never reviewed by a higher court, so did not become precedent. The *Mores* case found that *Wales* had not correctly analyzed the legislative purpose and related it to the classification created by the statute. *Mores* held that the legislative purpose was clearly not to assure to all illegitimates an equal chance of establishing paternity, or to make all putative fathers equally liable to paternity suits. Rather, it was more likely to assure that illegitimates were supported and educated by someone (mother, father, or public welfare), and to protect society by preventing the child from becoming a public charge if one of the other sources of private support

was available (*citing* 10 Am.Jur.2d *Bastards* § 75 (1963)). The statute seemed to the *Mores* court a very rational means of fulfilling such an objective.

The fact that the Legislature could have subjected the State to the same two-year period did not render unconstitutional the use of two different periods.

The court also noted the serious due process problem—that of obtaining proof—created for the father by a possible ten-year lapse. However, even the distinct possibility that after ten years many men would be subjected "to what is potentially a drumhead trial," 343 N.Y.S.2d at 226, did "not compel the conclusion that the 10-year statute was unconstitutional under the Due Process Clause," *id.*

The plaintiff mother in the case at bar argues, in addition to her equal protection challenge, that Tennessee's statute of limitations results in an unconstitutional denial of due process of law under the federal and state Constitutions. She states,

> The statute of limitations as drafted allows a child's right to paternal support to terminate before the child has any real opportunity to assert it. Permitting a child's mother to institute paternity proceedings in behalf of her offspring does not satisfy the requirements of due process because the mother's short term interests, i.e., continuing fondness for the father or her reluctance publicly to reveal her indiscretion, may conflict with the child's long term interests of support and legitimation.[3]

The Supreme Court in *Mills, supra,* did not reach the due process issue because it held that Texas' one-year statute denied equal protection. However, since it held that a state could enact a limitation period shorter than a child's minority, —— U.S. at ——, 102 S.Ct. at 1552, and because it recognized that "during the child's early years [a paternity action] will often be brought by the mother," *id.* at ——, 102

S.Ct. at 1555, we conclude by inference that to allow the mother to sue, and to grant her a time shorter than the child's minority, would not in and of itself be any more unconstitutional on due process grounds than it would be on equal protection grounds. The inquiry, then, remains essentially the same: whether the state's policy as reflected in the statute affords a fair and reasonable opportunity for the mother to decide in a rational way whether or not the child's best interest would be served by her bringing a paternity suit.

Other courts have addressed this issue and found such a statutory scheme constitutional. We quote at length from *Cessna v. Montgomery, supra:*

> The question, of course, is whether authorizing only the mother to bring suit unreasonably hinders the child's opportunity to secure support from his natural father. Obviously, the action must be brought by some person on the child's behalf, for the child cannot do so himself within the limitation period. And, we note parenthetically, it is within the competence of the legislature to enact a limitation period not tolled during minority. [Citations.]

Possible legislative alternatives would include authorizing an action by a next friend or guardian. Plaintiffs argue that under no circumstances should the mother be permitted to sue on behalf of the child since their interests are potentially adverse. (See H. Krause, Illegitimacy: Law and Social Policy 113, 151–52 (1971); Note, *Illegitimacy and Equal Protection,* 49 N.Y.U.L.Rev. 479, 530 (1974); Gray & Rudovsky, *The Court Acknowledges the Illegitimate: Levy v. Louisiana and Glona v. American Guarantee & Liability Insurance Co.,* 118 U.Pa.L.Rev. 1, 25 (1969).) Her continuing fondness for the father or her reluctance to publicly reveal her indiscretion could result in a decision to forego an otherwise viable suit. We

---

**3.** TCA § 36-224(1) allows suit to be brought by the mother or her personal representative. If the child is likely to become a public charge, suit may be brought by the state department of human services or by any person. If the mother is dead or disabled, suit may be brought by the child through a guardian or next friend.

do not deny this possibility exists. Yet plaintiffs' argument assumes that the child's interest is always best served by prompt suit against the father. Society still regards an illegitimate birth as something of a scandal, however, and the best interests of the child in a particular case may not always lie in the direction of public action against the natural father. It seems to us that the mother is ordinarily best positioned to make this difficult decision. Moreover, once a decision has been made to file an action, the interests of mother and child substantially coincide. Support for this conclusion is to be found in *Pittman v. United States* (9th Cir. 1965), 341 F.2d 739, where the court held a minor's tort claim against the government could constitutionally be barred after two years although he had no guardian *ad litem,* and despite a claimed conflict of interest that may have caused the father to subordinate his son's interest. The court specifically rejected plaintiff's contention that his right was meaningless because he could not act for himself during his minority.

In our judgment the General Assembly could reasonably conclude that the support right of an illegitimate child is best protected by requiring the action to be brought by the mother, and that the potential harm to putative fathers defending stale claims is, on balance, greater than the potential harm to illegitimate children whose support right is forfeited by the mother's inaction.

344 N.E.2d at 453. The highest court of Maryland agreed with this reasoning in a discussion found in *Thompson v. Thompson, supra,* 404 A.2d at 273.

In *Reynolds v. Richardson,* 483 S.W.2d 747 (Tenn.App.1971), *cert. denied,* 410 U.S. 944, 93 S.Ct. 1381, 35 L.Ed.2d 611 (1973), the Court of Appeals held that when the mother and grandparents of an illegitimate child accepted $500 from the parents of the putative father in exchange for their agreement not to bring any action against him, this did not release the *child's* cause of action to establish paternity and for support. The mother had brought an earlier paternity suit which she dismissed upon being paid the $500. The Court of Appeals stated,

"This statutory duty [of support] inures to the benefit of the child and we do not conceive that the dismissal by the mother of the original warrant could be considered as foreclosing the right to later assert the father's duty to furnish necessary support."

There is a distinction to be made between the release or waiver of the claims of the mother, which can validly be accomplished, and a release of the rights of the infant child which, ordinarily, should not be permitted. . . .

.    .    .    .    .

Accordingly, to the extent that this proceeding is brought by or for the benefit of the mother or maternal grandparents, it will be dismissed.

To the extent that this proceeding is brought by or for the benefit of the infant child, we hold that it is not affected by the above quoted release.

483 S.W.2d at 751–752.

The mother had filed and dismissed the original action very shortly after the child's birth. Thus, it can be distinguished from the case at bar in that the mother could not be said to have had a reasonable time during which to reflect upon and assess what course of action would be in the child's best interests. As a matter of policy, the mother as the party responsible for the child should have the entire two-year limitation period during which to consider a choice which will bind the child. To the extent to which the *Reynolds* opinion appears to hold that no action or decision made by the mother can be allowed to bind the child, it is overruled.

Several state courts have reached a contrary result and held their limitation periods unconstitutional. As mentioned above, *Matter of Wales v. Gallan, supra,* did so, but has not been looked upon as precedential. Two years was held too short a time during which to allow suit: Mothers might still have, or hope to resume a relationship with the father, or be anticipating voluntary ac-

knowledgment or support from him. In addition to the child's economic interest in establishing paternity, he has a "psychological" interest in knowing who his father is. Turning to the state's countervailing interests in maintaining the limitation, the two-year period was for the purpose of protecting the putative father from stale claims. This was not rational, because some fathers were subject to a ten-year period. Secondly, the purpose of the ten-year period was to protect the public purse, but the effect of this was to subordinate what should have been the state's primary purpose—protecting the well-being of children. The court's solution was to lengthen the limitation period to ten years for any suit. Thus, the court did *not* hold that illegitimate children had to be treated the same as legitimate children.

The Montana Supreme Court struck down a three-year limitation but retained it as to actions brought by the state. *Montana v. Wilson,* Mont., 634 P.2d 172 (1981).

In *Stringer v. Dudoich,* 92 N.M. 98, 583 P.2d 462 (1978), the New Mexico Supreme Court held unconstitutional a statute which placed a two-year limitation upon actions for support, except where paternity had been judicially established, or had been acknowledged in writing or by the furnishing of support. There was no limitation upon actions brought by the state.

The court reasoned that illegitimates had the same rights to support as did legitimates. Since there was no time limitation upon the right of a legitimate child to bring an action, *Gomez v. Perez* mandated that the same right be extended to illegitimates.

The Florida Supreme Court treated the subject in depth in *State v. West,* 378 So.2d 1220 (Fla.1979). Section 95.11(3)(b), Fla. Statutes (1975) required an action to determine paternity to be brought within four years, but under § 95.051(1)(e), the running of the time was tolled when the putative father made voluntary payments toward support.

The court pointed out that an illegitimate child had a right to support from his father, which right continued until the age of eighteen; and that placing a time limitation upon the enforcement of such resulted in

> the [legislature's] treating legitimate children differently from illegitimate children. Because of this statute, the rights of the illegitimate child to support may be foreclosed forever by failure of his mother to file suit through her ignorance, neglect, or sympathy with the father and through no fault of the child.

378 So.2d at 1222. The court reviewed the then existing Supreme Court opinions to determine that the "substantial relationship" test should be applied in considering whether or not the differing treatment was constitutional.[4]

In this situation, the court could not find a sufficient relationship between this statute and the state's interest in barring state claims, the reason being that the illegitimate's right to support was an ongoing one, continually renewing itself until the child reached eighteen. It was held that requiring suit to be brought within four years created an impenetrable barrier to the child's right, when the state could instead have specified requirements to assure that proof of paternity would be adequate. Be-

4. This conclusion seems correct. It is clear that the "strict scrutiny" test has been rejected by the Court, *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); *Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). *Mills v. Habluetzel, supra,* referred to the limitation as not being "substantially related" to the valid state interest in avoiding litigation of stale or fraudulent claims. When one reads the Supreme Court's numerous opinions concerning classifications based upon legitimacy, one discerns that the Court's objective has been to determine whether there

is a rational relationship between the classification and the state interest. However, the relationship must be actual, logical and apparent to the reasonable person. As the Court has put it, "the scrutiny by which their showing is to be judged is not a toothless one, e.g., *Jimenez v. Weinberger,* 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974)," *Mathews v. Lucas, supra,* 427 U.S. at 511, 96 S.Ct. at 2765. "In a case like this, the Equal Protection Clause requires more than the mere incantation of a proper state purpose." *Trimble v. Gordon, supra,* 430 U.S. at 769, 97 S.Ct. at 1464–1465.

sides, the limitation period defeated the state's own interest in children being supported by their natural parents.

In effect, the court held that any limitation period would be unconstitutional because it would result in differing treatment of legitimate and illegitimate children.

We have carefully considered *Mills v. Habluetzel, supra,* all of the earlier Supreme Court and state court opinions, the various policies and arguments advanced therein, and the arguments of the parties in the case at bar. We do not feel that *Mills* would require a holding of unconstitutionality here, even though obviously, in the wake of *Mills,* two years becomes the minimum period which could possibly be upheld. It is our opinion that those cases which uphold the constitutionality of limitation periods of two years or longer are the better reasoned. Cases finding unconstitutionality do not appear to recognize a distinction which we feel is important: that between the right to paternal support throughout minority (which exists equally in favor of both legitimates and illegitimates); and the right to establish the identity of the individual who bears such duty of support (wherein legitimates and illegitimates are not similarly situated classes).

In the case of an illegitimate child, the mother (or whoever might sue in her stead) must weigh the circumstances and relationships involved and determine whether it is in the best interests of the child and of herself to bring an action to identify the father, or not to bring an action and assume the entire duty of support herself. The *Mills* case definitively holds that the expressed state interest in having a statute of limitations upon paternity actions—preventing litigation of stale and fraudulent claims—is a valid one. It has held that one year is as a matter of law too short a time for the mother to make a decision, because of financial, emotional and, we might add, physical strains and problems which very often endure through

many months after childbirth. Even though these and other circumstances might also endure beyond the first year, we cannot say as a matter of law that the Legislature could not rationally determine that such a possibility became outweighed by the state's interest in prohibiting litigation of stale and fraudulent claims. The Legislature could rationally determine that two years is long enough for most women to have recovered physically and emotionally, and to be able to assess their and their children's situations logically and realistically. It could rationally decide, on the other hand, that to allow longer than two years would unreasonably increase the putative fathers' problems of proof in most cases. Its considerations could include the temporary nature of many relationships outside wedlock; the possibility of the formation of new relationships by the mother, putative father, and anyone else with whom she might have had relations at the relevant time; the difficulty of producing proof to rebut the mother's testimony; the statistics showing the frequency of false and very subjective testimony in this type of case; and the fact that, by the time two years have elapsed, the mother theoretically could have had another child.

Further, the Tennessee statute is "carefully tuned" to avoid hardship in predictable groups of cases, since it contains an exception for actions against men who have acknowledged their children in writing or by supporting them,[5] and it has been held that in Tennessee, regular or substantial payments are not required in order to constitute "support." *Reynolds v. Richardson,* 62 Tenn.App. 269, 462 S.W.2d 233 (1970). We do not today consider what circumstances outside the statute, if any, could keep the statute from operating in favor of a putative father in a particular case. In any event, the statutory exceptions should satisfy the concerns of the Supreme Court in *Mills,* about conditions persisting beyond one year which could make difficult the

**5.** TCA § 36 224(2); Justice O'Connor points out in her concurring opinion that the Texas statute does not make exceptions for these

"practical obstacles to filing suit within one year."

bringing of a paternity suit. The state's countervailing interest in doing justice and reducing the number of people on welfare is served by allowing the state a longer time during which to sue. The Court's concern about ongoing relationships among the parties is satisfied by the acknowledgement exceptions. This leaves the Court's concern that the limitation period is unique in not being tolled during the plaintiff's minority, but we do not find that this factor alone requires a holding of unconstitutionality of a two-year period, as opposed to any other period which can end during the plaintiff's minority.

■ Since the mother is the party primarily authorized by the statute to bring the action, and thus of necessity makes a decision which is binding on the child, we agree with those courts which have held that, for a myriad of reasons, she is the best qualified person to do so. The state has determined that the mother should be allowed to make this important decision, as it is essentially a private matter. So long as the child is able to be supported privately, the state allows the matter to remain private. If the mother comes to a point where she requires public assistance in order to support the child, the state and its taxpayers acquire an interest which they did not previously have, which accounts for the statute's exception for actions brought by the state.[6]

There are many decisions, both important and minor, arising in many contexts, which are made by parents on behalf of their children. These may have significant and lasting effects upon the children. A woman's decision to shoulder the duty of support and cut herself and the child off from the putative father, is but one example of such a decision. No matter what the limitation period, if it is shorter than the child's minority, the mother would still be the person making or profoundly influencing this decision.

Counsel for the mother in this case raises the possibility that a mother could evade the two-year period by giving up her job, thus losing her source of funds with which privately to support the child; and apply for welfare, thus forcing the state to bring a paternity suit, which can be done throughout the child's minority. Even if this could happen in a few cases, we would note that there are sanctions against abuse of the welfare system; and that such possibility does not render the Legislature's determination to set a two-year period unconstitutional. A mother could resort to such an option no matter how long or short the limitation period.

■ The mother petitioned to amend her complaint to add the name of the child, by the mother as next friend, as a plaintiff. The court allowed such an amendment, and the defendant and state have not appealed this ruling. However, TCA § 36–224(1) does not permit an action to be brought by the child except in case of death or disability of the mother. This error is harmless, as we hold that this action was barred by the two-year statute of limitations.

■ We find that the statute of limitations under consideration here meets the test enunciated by the Supreme Court in *Mills:* It is sufficiently long to present a reasonable opportunity for those who may sue, to assert claims on behalf of illegitimate children. Second, the general two-year limitation, although exceptions are provided where other state interests prevail, is substantially related to the state's interest in avoiding the litigation of stale or fraudulent claims. *See Mills, supra,* —— U.S. at ——, 102 S.Ct. at 1554. Two years, as opposed to one year, is not a period which "remove[s] an 'impenetrable barrier' to support, only to replace it with an opportunity so truncated that few could utilize it effectively." *Id.* at ——, 102 S.Ct. at 1553. *Every* illegitimate child can enforce a father's support obligation if a suit to declare paternity is brought, and two years is not,

---

**6.** We do not today decide the constitutionality of the eighteen-year exception to the limitation period, from the point of view of a putative father who is sued by the "Department of Human Services or any other person."

as a matter of law, an unreasonably short time. As the Supreme Court has said in another recent case,

> [f]ew statutory classifications are entirely free from the criticism that they sometimes produce inequitable results. Our inquiry under the Equal Protection Clause does not focus on the abstract "fairness" of a state law, but on whether the statute's relation to the state interests it is intended to promote is so tenuous that it lacks the rationality contemplated by the Fourteenth Amendment. . . .
>
> . . . Inheritance [in this case, enforcing the father's support obligation] is barred only where there has been a failure to secure evidence of paternity during the father's lifetime [in this case, within the period of limitations] in the manner prescribed by the State. This is not a requirement that *inevitably disqualifies an unnecessarily large number of children born out of wedlock.*

*Lalli v. Lalli,* 439 U.S. 259, 273, 99 S.Ct. 518, 527, 58 L.Ed.2d 503 (1978) (emphasis added).

It is not our function to substitute our opinion as to what would be the most desirable policy, for that of the Legislature. TCA § 36–224(2) meets the test of being substantially related to a legitimate state interest. Accordingly, the rulings of the trial court are reversed and this action is dismissed. Costs of this appeal shall be borne by the plaintiff-appellee.

Reversed and dismissed.

HARBISON, C. J., and FONES, COOPER and BROCK, JJ., concur.