OPINION OF THE COURT
David Gilman, J.
This paternity petition was filed on June 16, 1982 wherein it is alleged that respondent is the father of petitioner’s daughter, born June 25, 1974. The petitioner seeks an order of filiation declaring respondent to be the child’s natural father and an order of support. Respondent denied paternity in court and interposed the affirmative defense that petitioner’s claim is barred by the Statute of Limitations.
Petitioner admits that more than the two years allowed by the statute (Family Ct Act, § 517, subd [a]) have elapsed between the birth of the child and the filing of the petition. But she contends that the limitation period was tolled under one of the two exceptions provided in the statute, to wit, that respondent acknowledged paternity by supporting the child.
On April 20 and May 18, 1983, a hearing was held on this issue, briefs were submitted by counsel, and decision was reserved.
*691 The court finds that the Statute of Limitations was not tolled by payment of support as.alleged by petitioner. The facts found from all the credible, relevant evidence adduced at the hearing do not establish a pattern of support by respondent such as would clearly and unequivocally constitute an acknowledgment of paternity. (Matter of Wong v Beckford, 28 AD2d 137; Matter of Vicki B. v David H., 73 AD2d 645.) In the eight years since the child’s birth, respondent has only given petitioner sporadic and occasional gifts and small loans, not sufficient for this court to draw a clear inference of intention to support the child. The court cannot find that these few, infrequent sums comprise an acknowledgment of paternity. (Matter of Vicki B. v David H., supra.)
Since the Statute of Limitations has not been tolled, this claim would be time barred but for the decision in Pickett v Brown (462 US_[1983]), declaring unconstitutional the Tennessee paternity Statute of Limitations. This court finds subdivision (a) of section 517 of the Family Court Act so similar to the invalidated Tennessee statute as to compel a constitutional analysis, in light of the holding in Pickett v Brown (supra).
In Pickett v Brown (supra), the case began as a paternity and support action commenced some 10 years after the birth of the child. The applicable Tennessee Statute of Limitations provided that such an action must be filed within two years of the birth of the child. This statute included two tolling provisions: (1) if the putative father acknowledged paternity by providing support for the child, or (2) if the putative father acknowledged paternity in writing. The statute allowed the filing of a paternity petition up until the child’s 18th birthday where the child is or is likely to become a public charge. This latter section was not applicable to the facts of the case before the Tennessee court, and the mother did not contend that either of the tolling events had occurred. Rather, she claimed that the two-year limitation found in the statute unconstitutionally denied her child equal protection. The Tennessee Juvenile Court found for the plaintiff mother and declared the statute unconstitutional; the Tennessee Supreme Court reversed. (Pickett v Brown,. 638 SW2d 369.) On appeal, a *692 unanimous United States Supreme Court reversed, finding the statute to be violative of an out-of-wedlock child’s right to equal protection under the Fourteenth Amendment.
The Supreme Court in Pickett v Brown (supra) adopted the analysis of Mills v Habluetzel (456 US 91). First, it must be ascertained whether out-of-wedlock children, i.e., those acting on their behalf, are given a reasonable opportunity to bring a paternity and support action. Second, a statutory limitation of this opportunity must be substantially related to a legitimate State interest.
The Supreme Court found that the two-year limitation did not provide a reasonable opportunity for the child to bring a paternity action. Justice O’Connor stated in her concurrence in Mills v Habluetzel (supra), that during the first two years after birth, a mother may be economically, socially, emotionally, and psychologically inhibited from filing a paternity action. These factors were deemed especially significant in the Tennessee case, because the statutory framework did not provide for the child to bring suit but, rather, for the mother of the child to bring a paternity suit. The court found, for those children not coming within the tolling provisions of the Statute of Limitations and not receiving, or liable to receive public assistance, that two years was not a sufficient period of time to establish their paternity and concomitant right to support.
The court then addressed the issue of whether the two-year limitation on the opportunity to file a paternity action was “substantially related” to the legitimate State interest of averting stale or fraudulent litigation. By limiting the time to file suit, the State intended to limit the proof problems encountered by defendants. The court found that the short period of two years was not substantially related to the posited State’s interest.[2] The court was not convinced that in two years evidence would be lost or stale so as to unduly prejudice defendants.
*693 The court stated that lack of a substantial relationship between the State interest of averting stale and fraudulent claims and the two-year limitation was evidenced by the statutory provision allowing paternity claims for up to 18 years where welfare was involved. If proof of these claims would not be so stale or unavailable as to preclude them up to 18 years, then certainly that would not be the case after only two years in nonwelfare cases.[3]
Further evidence of the lack of a substantial relationship between the limitation and the State interest was noted by the court from the fact that most other Statutes of Limitation in Tennessee are tolled during a plaintiff’s infancy, the infant’s rights apparently outweighing any concern for proof problems.
The court also found that the relationship between the time limitation and aversion of stale or fraudulent claims suffers from the recent scientific advances in hematological testing which greatly reduce proof problems in paternity cases. While the State still has a legitimate interest in limiting stale or fraudulent claims, this interest is hardly aided by a two-year Statute of Limitations when sophisticated blood testing, e.g., the human leucocyte ántigen (HLA) tissue test, provides highly reliable evidence in paternity cases.
The Tennessee statute failed on both counts of the court’s twofold analysis. The court held that the equal protection right of out-of-wedlock children (not receiving public assistance) to receive support as wedlock (legitimate) children was violated by the statutory two-year limitation.
We turn now to the New York paternity Statute of Limitations found in subdivision (a) of section 517 of the Family Court Act: “Proceedings to establish the paternity of the child may be instituted during the pregnancy of the mother or after the birth of the child, but shall not be brought after the lapse of more than two years from the birth of the child, unless paternity has been acknowledged by the father in writing or by furnishing support, or unless *694 the mother is under the age of eighteen years, in which case the time limitation is extended until two years after the mother reaches the age of eighteen years.”
Both the New York and Tennessee statutes provide only two years for the mother to file a paternity action. Both toll this limitation if the putative father has acknowledged paternity either in writing or by supporting the child. The New York statute differs from the Tennessee statute in that 10 years are allowed for filing a paternity action when the child is receiving public assistance (Family Ct Act, § 517, subd [b]), rather than 18.
The Supreme Court’s analysis in Pickett v Brown (supra), of whether two years provides a reasonable opportunity for filing a paternity action, when applied to the New York statute, must lead to the same negative conclusión. Two years is a short period of time after the birth of a child for the mother to make a determination to institute an action against the putative father. In New York, as in Tennessee, paternity actions against putative fathers are not brought by the child but by the child’s mother, guardian, or next of kin. (Family Ct Act, § 522.) The same inhibitory factors found in Pickett v Brown (supra), to affect mothers in the first two years after birth of an out-of-wedlock child would also affect mothers in New York.
The New York State interest in limiting the time period during which a paternity action may be filed is the same as it was in the Tennessee case; avoidance of stale and fraudulent claims. As in Pickett v Brown (supra), the two-year limitation on paternity cases does not prove to be substantially related to this State interest. Evidence is not so stale or unavailable as to limit actions up to 10 years after a child’s birth when public assistance is involved. (Family Ct Act, § 517, subd [b].) The proof problems, which the limitation aims to avoid, are not so significant as to preclude tolling of other statutory periods during a plaintiff’s infancy. (CPLR 208.)
The relationship between the two-year limitation and the State interest are even more attenuated in the case at bar than in the Tennessee case. In New York, blood test results of the HLA are now admissible in support of a claim of paternity as well as to exclude one from paternity *695 (Family Ct Act, § 532, subd [a]), whereas blood test results were only admissible in Tennessee to exclude paternity. In fact, this expanded judicial use of blood test results serves the State interest of limiting the welfare rolls and lessens the chance of fraudulent claims. There is clearly not a substantial relationship between the two-year limitation and the State interest of avoiding stale or fraudulent claims.
In accordance with the foregoing, this court hereby finds subdivision (a) of section 517 of the Family Court Act, allowing only two years after the birth of a child for filing of a paternity petition to be unconstitutional, in that this limitation violates the child’s right to equal protection under the Fourteenth Amendment.
This case is set down for trial on the issue of paternity on August 8, 1983, in Part I.

. In Mills (supra), Justice O’Connor questioned the real interest being protected by the limitation period. She found the ostensible State interest of limiting stale and fraudulent claims to be offset by the obvious State interest in limiting the welfare rolls by fulfillment of paternal support obligations. Furthermore, Justice O’Connor noted, with advanced blood testing now available, assuring a very high accuracy of exclusions of paternity, statutory protection from fraudulent or stale claims may not be needed.

. Whether different treatment for out-of-wedlock children not receiving public assistance and out-of-wedlock children receiving public assistance, i.e., different time to file suit, could be constitutionally justified by the State interest in limiting the welfare rolls was not addressed.